**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :    No. 22-cr-275-CKK |
| | : |
| v. | : |
| | : |
| PHILIP DUPREE, | : |
| | : |
| *Defendant*. | : |
| | : |

### DEFENDANT'S OPPOSITION TO
### GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF PRIOR ACTS

Defendant Philip Dupree, by and through his undersigned counsel and in accordance with this Court's August 29, 2023 Scheduling Order, hereby opposes the Government's Motion to Admit Evidence of Prior Acts (D.E. 32) (the "Motion"). As set forth below, the Government's proffered evidence is improper propensity evidence and is inadmissible under the Federal Rules of Evidence.

### INTRODUCTION

Philip Dupree was indicted on one count of deprivation of civil rights, in violation of 18 U.S.C. § 242, and one count of obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3), based on a traffic stop and subsequent arrest he conducted on August 4, 2019, while on duty for the Fairmount Heights, Maryland Police Department ("FHPD"). *See* Indictment (D.E. 1). In Count One, the Government alleges that Officer Dupree used department-issued pepper spray against Torrence Sinclair "without any legitimate law enforcement purpose." *Id.* ¶ 6. In Count Two, the Government alleges that Officer Dupree knowingly and intentionally obstructed the Federal Bureau of Investigation's potential investigation *of his own alleged federal offense*, by submitting a "false[]" statement of probable cause for Sinclair's arrest to a Maryland state commissioner. *Id.*

¶ 8. Notwithstanding the narrow contours of the facts and circumstances underlying the charges in this case, the Government asks this Court to admit two categories of "prior acts" evidence, both of which are inadmissible.

The Government first seeks admission of "evidence that the Defendant was previously investigated for and suffered negative employment consequences because of prior incidents of excessive force." Motion at 1. According to the Government, this evidence, which related to Officer Dupree's prior tenure with the District Heights, Maryland Police Department ("DHPD"), is admissible "either as intrinsic evidence of the charged offenses" or "under FRE 404(b), as proof of the Defendant's knowledge[.]" *Id.* But the Government is wrong, both in its characterization of the evidence and its application of the Rule. The proffered evidence is plainly extrinsic and, therefore, governed by Rule 404(b), and the Government failed to provide the necessary notice. Moreover, the proffered evidence is inadmissible when examined under the Rule 404(b) framework, as it is not probative of any issue other than Officer Dupree's character and, under the Rule 403 balancing test, the dangers of unfair prejudice, confusing the issues, and misleading the jury outweigh any probative value.

The Government also seeks to admit "evidence of a prior excessive force incident where the Defendant similarly pepper-sprayed a restrained arrestee in his custody." Motion at 1. In the Government's view, this evidence, which relates to a September 6, 2018 arrest made by Officer Dupree, "is admissible under FRE 404(b) as evidence of the Defendant's intent, motive, absence of mistake, and knowledge with respect to the charged offenses." *Id.* Although the Government did provide some notice regarding this category of evidence, the notice was insufficient. *See* Government's FRE 404(b) Notice (D.E. 30). In addition, the proffered evidence is inadmissible under Rule 404(b) because the "permitted uses" identified by the Government are not relevant; the

proffered evidence is propensity evidence; and, even if the evidence were relevant and generally admissible under Rule 404(b), application of the balancing test in Rule 403 mandates exclusion. To allow such highly inflammatory evidence before the jury would remove any opportunity for Officer Dupree to receive a fair trial of the events at issue in this case.

For these reasons, set forth in further detail below, Officer Dupree respectfully requests that the Court deny the Government's Motion in full, and preclude the Government from introducing any evidence related to Officer Dupree's prior "employment consequences" from DHPD, and the alleged "prior excessive force incident" on September 6, 2018, at a trial focused on the issue of whether Officer Dupree used unreasonable force *on August 4, 2019*.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 2022, a grand jury sitting in the District of Columbia indicted Philip Dupree, an officer of the Fairmount Heights, Maryland Police Department, with one count of deprivation of civil rights, in violation of 18 U.S.C. § 242, and one count of obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3). The charges stem from an August 4, 2019 traffic stop that was initiated in Maryland and ended on a street bordering Maryland and Washington, D.C. Unlike cases one would typically expect the Department of Justice's Civil Rights Division to bring, there is no allegation of any death, shooting, maiming, loss of consciousness, physical impairment, suffocation, wounding, beating, sexual assault, or any other such conduct. Rather, Officer Dupree

---

[1] Officer Dupree previously moved *in limine* (D.E. 33) to exclude the evidence identified in the Government's 404(b) notice (which was significantly amended and supplemented by the Government's 404(b) motion months later). The Government in its recent filing (D.E. 36 at 2) makes a point to note that Officer Dupree *only* challenged the 404(b) evidence relating to the September 6, 2018 incident. That is because that was the *only* item listed in the Government's 404(b) notice (*see* D.E. 30). The Government's current position is that its notice of its 404(b) evidence is timely under the Federal Rules of Evidence through the filing of its written 404(b) motion, although not timely in accordance with this Court's Scheduling Order. *See* Gov't Opp'n at 2 (D.E. 36).

is alleged to have deployed his OC spray to control an arrestee who was resisting arrest and who

tried to bite him. OC spray is standard equipment issued to police officers nationwide, and its use

by officers constitutes a justified and necessary one-level of force increase for an officer to control

an arrestee who is actively resisting arrest and who otherwise poses a danger to the officer.

**(i)      August 4, 2019 Traffic Stop.**

On August 4, 2019, at about 1:11 am, Officer Dupree observed a motor vehicle traveling

at a high rate of speed on Sheriff Road passing Addison Road, heading towards the Washington,

D.C. border. Because the speed limit on Sheriff Road at Addison Road in Fairmount Heights is 35

miles per hour, Officer Dupree conducted a traffic stop of the vehicle, which landed on Eastern

Avenue at Booth Lane in Washington, DC. The motor vehicle was operated by Torrence Sinclair.

Mr. Sinclair's sister, Taylar Sinclair, was seated in the front passenger seat. Officer Dupree

requested back up almost immediately after initiating the traffic stop. Around the same time,

Taylar Sinclair called 911 and reported that an officer was attempting to arrest her brother.

Thereafter, Officer Dupree requested a check of Mr. Sinclair's driver's license and warrant

status. The dispatcher advised that Mr. Sinclair's driver's license was valid, and that he had no

warrants but had been arrested for burglary in Montgomery County, Maryland. Because of Mr.

Sinclair's increasingly aggressive and belligerent behavior towards Officer Dupree during the

traffic stop for reckless driving, Officer Dupree had Mr. Sinclair exit his vehicle, placed Mr.

Sinclair in handcuffs, and seated Mr. Sinclair in the front seat of his police vehicle (with the

seatbelt buckled) while waiting for additional police assistance.

As Officer Dupree's police assistance arrived, Mr. Sinclair's mother, Isyna Sinclair,  and

friend, David Felger, arrived on scene. Taylar Sinclair (the front-seat passenger) had been talking

with her mother on the phone during the traffic stop. An officer from the Metropolitan Police

Department ("MPD") also responded to the scene, based on the 911 call made by Taylar Sinclair. In addition, Officer Dupree had called for a tow crane to impound Mr. Sinclair's vehicle and the tow crane arrived just after Mr. Sinclair's family arrived on scene.

As the tow crane driver was hooking up Mr. Sinclair's vehicle for impoundment, Isyna and Taylar Sinclair indicated that they did not want the vehicle towed off the scene. Attempting to take possession of the vehicle and prevent it from being impounded, Taylar Sinclair entered the front passenger side of the vehicle. Isyna Sinclair was videotaping the events as they transpired and encouraged her daughter to not allow the vehicle to be towed from the location. Taylar Sinclair eventually exited Mr. Sinclair's vehicle, and Officer Dupree placed her in handcuffs for both of their safety. While Officer Dupree was attempting to secure Taylar Sinclair, Mr. Sinclair managed to operate the siren on and off in the police vehicle from his position in the front passenger seat, despite being handcuffed with his hands behind his back. Isyna Sinclair continued to incite the situation by yelling to the police about not handling Taylar Sinclair or impounding the vehicle, and about Mr. Sinclair needing medical care because he purportedly could not breathe, even though no significant contact had occurred with him and any law enforcement officer. Officer Dupree secured the handcuffed Taylar Sinclair and sat her on the street curb by his police vehicle.

Meanwhile, Mr. Sinclair had access to the front passenger side door handle and was opening the door of the police vehicle. Corporal Jason Buie, of the Prince George's County Police Department ("PGPD"), intervened. Mr. Sinclair was removed from the police vehicle and seated next to his sister on the curb. Mr. Sinclair and Taylar Sinclair continued their belligerent and aggressive behavior towards Officer Dupree. Mr. Sinclair was kicking and would not stay still while seated on the curb. Taylar and Isyna Sinclair continued to encourage the unruly and unpredictable behavior of Mr. Sinclair.

Eventually, Officer Dupree helped Mr. Sinclair to stand up again when preparing to transport him from the scene. Neither Mr. Sinclair nor Taylar Sinclair wanted Officer Dupree to transport Mr. Sinclair. Officer Dupree then placed Mr. Sinclair back into the front passenger seat of the police vehicle, but did not seatbelt him. Officer Dupree remained standing in the open wedge of the front passenger door and the front passenger seat. Mr. Sinclair continued to be defiant towards Officer Dupree and kept protruding his head outside the opened door frame of the police vehicle, but became silent as Officer Dupree explained to Taylar Sinclair that her handcuffs would be removed and she would be released. As Officer Dupree was explaining Taylar Sinclair's release, Officer Dupree allowed the left side of his upper body arm inside of the front passenger door frame. It was at this time that Mr. Sinclair had the opportunity and ability to attempt to bite Officer Dupree on the left arm.

Officer Dupree stepped to the side and stated, "Did you just . . . ," obtained his department-issued OC spray from the right side of his utility belt, shook it, and shot one burst of OC spray at Mr. Sinclair. No additional force was used by Officer Dupree on scene and the facts and circumstances described above constitute the entire basis for the Government's civil rights prosecution in this case.

**(ii)    Alleged Obstruction.**

As set forth in the Indictment, the Government alleges that on the very same evening he arrested Mr. Sinclair on Maryland state court offenses, Officer Dupree obstructed a *future* federal investigation of *himself* by the manner and substance in which he "reported the circumstances surrounding and justifying [his] use of pepper spray" to a "Maryland state commissioner." Indictment, ¶ 8. In its recent motion (D.E. 32 at 2), the Government claims that Officer Dupree committed obstruction by "falsely" stating in his probable cause statement that Sinclair "had been

physically aggressive and out of control" and "tried to bite" him.

## ARGUMENT

I.      **The Government's Proffered Evidence Regarding Officer Dupree's Termination from DHPD Is Not Admissible Under Either of the Government's Theories.**

The Government seeks admission of evidence related to Officer Dupree's prior termination from the District Heights, Maryland Police Department, contending that it is "intrinsic to the charged offense or alternatively admissible under FRE 404(b)[.]" Motion at 2-3. The Government not only mischaracterizes the evidence, but also fails to establish its admissibility under either theory.

### A.      The Government Misrepresents the Evidence.

The Government's characterization of the DHPD evidence is entirely at odds with the actual documents. The Government cites to a letter from the DHPD police chief, claiming that it mentioned "*two* prior excessive force complaints." Motion at 3 (emphasis added). To the contrary, the May 11, 2015 letter, attached to the Motion as Exhibit A, listed one complaint for "use of force" and one complaint for "excessive force," not "two prior excessive force complaints." The "use of force" by law enforcement officers is generally permitted subject to the policies of each individual department, and the levels can range from something as simple as verbal commands (or non-physical force) to lethal force.[2]

According to the Government's retelling, Officer Dupree "was terminated from DHPD where [he] worked prior to his employment with the FHPD—due to numerous citizen complaints of aggressive behavior and demeanor, including complaints that he used excessive force." Motion

---

[2] *See generally* National Institute of Justice, *Overview of Police Use of Force* (Mar. 5, 2020), https://nij.ojp.gov/topics/articles/overview-police-use-force, last visited January 16, 2024; National Institute of Justice, *The Use-of-Force Continuum* (Aug. 3, 2009), https://nij.ojp.gov/topics/articles/use-force-continuum, last visited January 16, 2024.

at 3. But, the October 2, 2015 letter, attached to the Motion as Exhibit B, makes clear that Officer Dupree's failure to "be more productive" and the lack of "discernable changes in [his] productivity" were also contributing factors. None of this is relevant to whether he was permitted to use his OC spray to control an actively resisting individual that he was lawfully arresting.

The Government also contends that, on his FHPD application, Officer Dupree made a "subsequent admission that he knew he had been terminated due to allegations of his use of excessive force." *Id.* at 4. This again conflates "use of force" with "excessive force" and ignores portions of the document. The application, attached to the Motion as Exhibit C, asked, "Have you been the subject of any internal investigations?" In response, Officer Dupree wrote that he "ha[d] been investigated for use of force," "cleared," and then "Terminated." There is no mention of "excessive force," and no direct connection drawn between the investigation and termination.

As discussed below, even without the mischaracterizations, the Government's proffered evidence is not probative of any issue other than Officer Dupree's character. The Government wants to parade before a jury — during an extremely hostile time towards law enforcement officers — arguments and allegations that Officer Dupree is a bad officer. That is exactly what the Federal Rules preclude.

**B.      The DHPD Evidence Is Not "Intrinsic" to the Charged Offense.**

In an apparent attempt to remedy its failure to provide the notice required by Rule 404(b), the Government asserts that the evidence related to Officer Dupree's termination from DHPD is admissible as "intrinsic" or "inextricably intertwined" evidence, because it is "directly relevant to the element of willfulness that the government must prove at trial." *See* Motion at 6-7. This argument does not reflect the case law that is binding on this Court.

The District of Columbia Circuit "has criticized the distinction between 'intrinsic' and

'extrinsic' evidence," noting that it is "commonly invoked to avoid the procedural requirements associated with introducing 'other crimes evidence' pursuant to Federal Rule of Evidence 404(b)." *United States v. Edwards*, 889 F. Supp. 2d 47, 49 (D.D.C. 2012) (citing *United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cir. 2000)).[3] In *Bowie*, the Court explicitly rejected the approach adopted by other Circuits defining "inextricably intertwined" evidence as that which "complete[s] the story" or "explain[s] the circumstances." 232 F.3d at 928-29; *see also Edwards*, 889 F. Supp. 2d at 49. Notably, "[t]o be 'intrinsic,' evidence must be more than merely relevant to a charged crime, otherwise 'Rule 404(b) would be a nullity.'" *United States v. Fitzsimons*, 605 F. Supp. 3d 92, 97 (D.D.C. 2022).

Here, the proffered evidence relates to Officer Dupree's termination from DHPD, a separate police department with different policies from FHPD, for reasons entirely unrelated to the charged conduct. Because the proffered evidence is not "of an act that is part of the charged offense," nor of "uncharged acts performed contemporaneously with the charged crime" that "facilitate the commission of the charged crime," it is not intrinsic. *Bowie*, 232 F.3d at 929 (recognizing categories of evidence that may be intrinsic). "Rule 404(b), and particularly its notice requirement, should not be disregarded on such a flimsy basis," *id.*, and the Government's Motion should be denied.

### C.     The DHPD Evidence Is Not Admissible Under Rule 404(b).

Rule 404(b) bars the admission of evidence of a "crime, wrong, or other act" offered "to prove a person's character in order to show that on a particular occasion the person acted in

---

[3] Is there any doubt than when this Court ordered the Government to identify other prior bad acts that it contemplated introducing into evidence at trial that request would have included events in Officer Dupree's law enforcement history that were completely unrelated to the facts and circumstances of the charged conduct on August 4, 2019.

accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence "may be admissible for another purpose," however, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," if the Government provides notice of its intent to offer the evidence and, when requested, guidance is provided to the jury in the form of limiting instructions. *See* Fed. R. Evid. 404(b)(2).

The prohibition in Rule 404 against introducing character evidence is based "on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her prior misdeeds." *United States v. Daniels*, 770 F.2d 1111, 16 (D.C. Cir. 1985); *accord Michelson v. United States*, 335 U.S. 469, 475-76 (1948) (finding that prior bad acts evidence offered to show propensity "is said to weigh too much with the jury and to so over persuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge").

In this Circuit, a two-step test governs the admissibility of 404(b) evidence. *First*, the Court must determine whether the evidence is "probative of some material issue other than character." *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994). *Then*, "if the evidence is relevant for a permissible purpose, the Court should conduct a balancing test under Rule 403 and exclude the evidence if its probative value 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Fitzsimons*, 605 F. Supp. 3d at 98 (citing *United States v. King*, 254 F.3d 1098, 1100 (D.C. Cir. 2001); Fed. R. Evid. 403).

Indeed, the D.C. Circuit has emphasized that "[e]ven if it is concededly relevant, unduly prejudicial evidence may be excluded to prevent jurors from impermissibly relying on biases, dislikes, or the emotional impact of the evidence, for example by drawing on assumptions about a defendant's bad character, rather than proof of the criminal conduct charged." *United States v.*

*Straker*, 800 F.3d 570, 589 (D.C. Cir. 2015). The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Evidence of past crimes creates an "enormous danger of prejudice to the defendant" because "juries are prone to draw illogical inferences from such evidence." *United States v. Shelton*, 628 F.2d 54, 56 (D.C. Cir. 1980).

Because the Government failed to provide notice in accordance with the Court's Scheduling Order, and cannot show that the evidence is relevant to a permitted purpose, the Motion should be denied.

### 1.    The Government Failed to Satisfy the Notice Requirement.

Federal Rule of Evidence 404(b)(3) sets forth the requirements for the Government's notice regarding evidence proffered under Rule 404(b). The prosecutor must:

(A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;

(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and

(C) do so in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3). The advisory committee notes further clarify that "[t]he prosecution must not only identify the evidence that it intends to offer pursuant to the rule but also articulate a non-propensity purpose for which the evidence is offered and the basis for concluding that the evidence is relevant in light of this purpose." Fed. R. Evid. 404, Advisory Committee's Note to 2020 Amendment.

Here, the Government did not provide notice of its intention to introduce evidence related to Officer Dupree's termination from DHPD by the deadline set in the Court's August 29, 2023

Scheduling Order. *See* Aug. 29, 2023 Order at 1 (requiring the Government to provide its Rule 404(b) notice by November 3, 2023) (D.E. 28).

> **2.     The Government Cannot Establish that the DHPD Evidence is Relevant to a Permitted Purpose.**

The Government's Motion includes various undeveloped arguments for why the DHPD evidence is admissible under Rule 404(b). None of the arguments hold water, particularly when the Government's misrepresentations of the evidence are filtered out.

The Government contends first that the evidence is admissible to "prove that [Officer Dupree] had *knowledge* that using excessive force was unlawful[.]" Motion at 2-3 (emphasis in original). Similarly, the Government claims that the evidence "shows that the Defendant did not act by mistake or accident because he was put on notice by DHPD that using excessive force was prohibited." *Id.* at 10. Nothing in the DHPD evidence, however, involved a finding that Officer Dupree's conduct was "unlawful." Instead, citizens submitted complaints and, as Officer Dupree wrote in his application to FHPD, he was "cleared" after the investigation of his "use of force," but then terminated. Termination is an administrative consequence, and does not bear on what is "unlawful," or what amounts to a constitutional violation.

Moreover, the Government has not explained how "negative employment consequences" at DHPD, following a variety of citizen complaints, would tend to demonstrate Officer Dupree's knowledge of what constituted "excessive force" under FHPD's policies. More specifically, there is nothing in the proffered evidence tending to show that Officer Dupree should have known that the use of his department-issued pepper spray, under the circumstances present on August 4, 2019, was "excessive" under FHPD policies, based on his past experience with DHPD. Moreover, Officer Dupree could have been the worst police officer in the history of the force, but, nonetheless, acted objectively reasonable on August 4, 2019, and likewise, could have been a perfect police

officer for twenty years and still have acted unreasonable on the day in question. That is exactly why the trial of this matter should be focused on the facts and circumstances of the charged events and not allegations unrelated to the events offered solely to adversely influence the jury.

The Government also argues that "[e]vidence of the adverse employment consequences at the DHPD also establishes a motive for the Defendant to lie in the probable cause statement he submitted following the incident with T.S." *Id.* at 4. As noted above, however, the Government's proffered evidence does not establish a causal connection between the single complaint for "use of force" and single complaint for "excessive force," and Officer Dupree's termination. And, the letter attached as Exhibit B to the Motion confirms that DHPD terminated Officer Dupree based in part on his failure to meet the department's expectations for productivity.

All in all, after throwing theories against the wall to see what sticks, the Government has not established that the proffered DHPD evidence is relevant to any of the purposes permitted under Rule 404(b). To the extent that the Court finds that the evidence is relevant to a permitted purpose, the evidence should still be excluded under Rule 403. Allowing the Government to introduce the DHPD documents detailing Officer Dupree's termination, in a case stemming from his conduct while employed by a separate police department, clearly presents a danger of unfair prejudice, confusing the issues, and misleading the jury, which outweighs any probative value.

## II.     The Government's Proffered Evidence Regarding the Events of September 6, 2018 Is Not Admissible Under Rule 404(b).

The Government seeks admission of evidence of what the Government characterizes as "a prior incident where the Defendant both used unlawful force against an arrestee and defeated a false probable cause statement to cover it up." Motion at 3. According to the Government, the evidence is relevant as "evidence of the Defendant's intent, motive, lack of mistake or accident, and knowledge with respect to the excessive force incident against T.S. and the obstruction

offense," and "to rebut his denial and anticipated defenses." *Id.* The Government again embellishes the evidence, and fails to establish its admissibility under Rule 404(b).

### A.     The Government Overstates the Evidence.

By letter dated October 30, 2023 (D.E. 30), the Government provided the following brief notice to the defense:

> The Government will present testimony, documentary, and video evidence that on or about September 6, 2018, Defendant Dupree, while working and on duty as a police officer for the Fairmount Heights Police Department, willfully used unreasonable force against Raven Monique Goodwine. Specifically, after Defendant Dupree had conducted a traffic stop of a vehicle driven by Goodwine, Dupree slammed Goodwine onto the hood of Dupree's car. After restraining Goodwine by cuffing her hands behind her back, Defendant Dupree pepper sprayed Goodwine without any legitimate law enforcement purpose. Following Goodwine's arrest, Defendant Dupree submitted a statement of probable cause to a Maryland state commissioner falsely reporting the circumstances surrounding and justifying Dupree's use of force against Goodwine.
>
> The similarity of the charged conduct combined with its temporal relationship with the above noticed FRE 404(b) incident is evidence of Defendant Dupree's intent, knowledge, and absence of mistake to commit the charged offenses.

*See* 404(b) Notice at 1 (D.E. 30).

In the Motion, the Government repeats the assertion that Officer Dupree pepper-sprayed Ms. Goodwine "without any legitimate law enforcement purpose" and submitted a "falsified probable cause statement." Motion at 5. Despite admitting that Ms. Goodwine was "distraught, verbally abusive, and spat at the Defendant," the Government attributes his use of the department-issued pepper spray to a "fit of rage," claiming that Officer Dupree "reactively uses excessive force when he is angry[.]" *Id.*

Based on the materials provided by the Government in discovery, Ms. Goodwine admitted in a law enforcement interview that she did not want to be arrested by Officer Dupree, although she was operating a vehicle without a license and actively resisted arrest. Ms. Goodwine demanded

14

a "white shirt," a common tactic used to request supervisors to the scene as part of an attempt to resist arrest. An officer arriving on scene after the incident observed Ms. Goodwine being "hysterical," "verbally aggressive, non-compliant, and disrespectful," and a separate responding officer described a crowd formed around the area as "hostile." Officer Dupree also stated, to responding offers and in his arrest report, that Ms. Goodwine kicked him in addition to spitting in his face. As the special agent investigating Officer Dupree wrote in his report, the available video of the encounter does not contradict this claim, as "the camera is not angled in such a direction that would have captured what 'R.G.' was doing with her feet."

Overall, the Government's characterization of the September 6, 2018 incident makes several inferences in a misguided attempt to establish relevance.

### B.    The Government's Notice Was Insufficient.

As set forth above, Rule 404(b)(3) sets forth requirements for the Government's notice regarding evidence proffered under Rule 404(b). Here, the Government's notice failed to "articulate" the "reasoning that supports the purpose" for which the purported 404(b) evidence is being introduced at the trial in this case. *See* Fed. R. Evid. 404(b)(3)(B). A review of discovery produced by the Government as to the September 6, 2018 event makes clear that the Government believes any time an officer uses pepper spray during an arrest, it is Rule 404(b) evidence in a subsequent prosecution for unreasonable force. That is not the case. As set forth *infra*, that is propensity evidence expressly forbidden by Rule 404(b). *See* Fed. R. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

### C.    The Government's Proposed Purposes for the Evidence – Intent, Motive, Lack of Mistake or Accident, and Knowledge – Are Not Relevant.

In its limited notice, the Government stated that its proffered 404(b) evidence "is evidence

of Officer Dupree's intent, knowledge, and absence of mistake to commit the charged offenses." *See* Gov't 404(b) Notice at 1 (D.E. 30). In the Motion, the Government adds "motive" and "lack of accident" to the list. *See* Motion at 3. Although 404(b) evidence can be admissible for the purpose of establishing motive, intent, knowledge, lack of accident, or absence of mistake, those topics are not relevant in this case and, in any event, the Government's purported 404(b) evidence does not establish any of the permitted uses.

As the jury will be instructed at trial and as the Supreme Court has instructed, an "officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The reasonableness of a use of force turns on whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation." *Williams v. City of Burlington, Iowa*, 27 F.4th 1346, 1351 (8th Cir. 2022); *accord Wilson v. City of Bastrop*, 26 F.4th 709, 713 (5th Cir. 2022) ("The court evaluates officers' actions in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (punctuation and citations omitted)); Ninth Circuit Manual of Model Civil Jury Instructions, Instruction No. 9.25 Particular Rights—Fourth Amendment—Unreasonable Seizure of Person— Excessive Force, https://www.ce9.uscourts.gov/jury-instructions/node/163, last visited December 20, 2013 ("Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry."); *id* at comment ("An officer's subjective intent or motivation is not relevant to the reasonableness inquiry." (citing *Graham*, 490 U.S. at 397; *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1116 (9th Cir. 2017))).

As intent is irrelevant to the issue of whether the force used by Officer Dupree was

reasonable, admitting 404(b) evidence on this basis would be impermissible.[4] *See, e.g., Lopez v. City of Lancaster*, No. 5:19-cv-05104-KSM, 2021 WL 5279880, at \*7 (E.D. Pa. Nov. 12, 2021) (reasoning that because a detective's "subjective intent or motivation is irrelevant," his "unrelated interactions with nonparties are not germane to the jury's determination of whether he used reasonable force in arresting" plaintiff); *Jonas v. Board of Comm'rs of Luna County*, 699 F. Supp. 2d 1284, 1291-92 (D.N.M. 2010) (listing numerous cases where district courts have "excluded evidence regarding a police officer's use of force in unrelated incidents" as irrelevant given the *Graham v. Connor* "objective reasonableness" standard); *Thompson v. Mancuso*, No. 08-cv-3638, 2009 WL 2616713, at \*7-8 (E.D. Pa. Aug. 25, 2009) (excluding evidence of an officer's prior interactions as having "limited probative value . . . because intent is not a central issue in deciding whether the force used by Defendants was reasonable" and there was "a substantial risk that the jury would view all the aforementioned evidence of prior misconduct as 'did it once, did it again' evidence"); *Phillips v. Irvin*, No. 05-0131-WS-M, 2007 WL 2310038, at \*3 (S.D. Ala. July 27, 2007) (rejecting use of other acts "evidence to show Trooper Irvin's intent and motive for purposes of proving up [. . . a] Fourth Amendment excessive force cause of action" because "an officer's intent or motive is irrelevant to the objective reasonableness analysis that attaches to such causes of action"); *accord Palmer v. Nassan*, 454 F. App'x 123, 126 (3d Cir. 2011) (affirming exclusion of three prior excessive force lawsuits because, *inter alia*, Rule 404(b) dictates that such evidence may not be used to establish the defendant's propensity to commit the charged act and because an officer's actions are evaluated objectively with the officer's subjective intent or motivation being irrelevant); *Tanberg v. Sholtis*, 401 F.3d 1151, 1167-68 (10th Cir. 2005) (affirming trial court's

---

[4] Even the Government's own proffered expert, William Gleason, has confirmed in his written expert opinion that the analysis of the reasonableness of Officer Dupree's actions in this case is from an "Objectively Reasonable" standard. *See* Gleason Opp'n at 3.

exclusion under Rules 403 and 404(b) of evidence of other occasions when the officer arrested persons without probable cause or used excessive force because evidence was unduly prejudicial and was irrelevant to the objective constitutional standard).

Moreover, as discussed above, to establish willfulness, the Government must prove that Officer Dupree knew his specific conduct was unlawful (*i.e.*, when and how he allegedly improperly used his department-issued pepper spray) and intended to violate the law. The Government's purported 404(b) evidence, which did not result in any charges or convictions, does not elucidate Officer Dupree's knowledge as to whether his actions in this case were unlawful, which they were not. *See*, *e.g.*, *United States v. Pettus*, No. 3:20-cr-100-SLG-MMS, 2021 WL 4096966, at *2 (D. Alaska Sept. 8, 2021) (holding that a prior use of force incident had "minimal probative value" because the defendant officer was not aware of the finding that it was "unjustified and outside of policy" on the date of the charged conduct); *United States v. Krug*, No. 1:15-CR-00157 RJA, 2019 WL 336568, at *3, n.2 (W.D.N.Y. Jan. 28, 2019) (declining to find that other incidents were probative of the defendant officer's knowledge where the government did "not intend to offer proof that defendant was disciplined after the other incidents"); *cf. United States v. White*, 68 Fed. Appx. 707, 709-10 (7th Cir. 2003) (holding that evidence of a prior assault was admissible where the defendant officer had been suspended from duty and thus was on notice that the use of unnecessary force under color of law is illegal); *United States v. Mize*, 498 F. Supp. 3d 978, 984 (S.D. Ohio 2020) (finding that prior incidents of excessive force were probative of willfulness, where the defendant officer was disciplined after each incident and told that his use of force violated the rules and regulations of the department).

Even if that intent was present, this is not a case where an officer is alleged to have used a technique or instrument barred by the law; rather, he was using his law enforcement-issued pepper

spray, consistent with universal law enforcement training to use non-deadly force to deescalate a situation, and pepper spray constitutes a one-level increase in force to stop a resisting individual. Any claim of negligence or reckless use of his pepper spray is for a civil court and has no place in a federal criminal civil rights case. *See* DOJ Civil Rights Division, https://www.justice.gov/crt/law-enforcement-misconduct ("Mistake, fear, misperception, or even poor judgment does not constitute willful conduct prosecutable under the statute").

As for the proffered 404(b) basis of "absence of mistake," it is undisputed that Officer Dupree voluntarily deployed his pepper spray. It was not deployed "by accident." The Government's attempt to introduce an event unrelated to the charged conduct in this case seeks to turn this case into a trial within a trial, purportedly with expert testimony whether the use of force in the 404(b) event was unreasonable, because absent such testimony, the event is of no consequence. Even then, a prior use of unreasonable force has absolutely no bearing on whether the force used in this case was reasonable or unreasonable — that is pure propensity evidence.

## III.    The Government's Proffered Evidence Is Inadmissible Propensity Evidence.

Officer Dupree was an officer for eight years and in that capacity had hundreds of citizen contacts. Having failed to establish a permissible basis for admitting one single contact in his significant law enforcement career, the admission of the Government's proffered 404(b) evidence would have the effect of telling the jury that Officer Dupree routinely uses pepper spray or purportedly uses unreasonable force — propensity evidence that is expressly prohibited. *See Glaze v. Childs*, 861 F.3d 724, 726 (8th Cir. 2017) (upholding exclusion of evidence that the defendant officer was forced to resign after violating institutional policy in excessive force case when finding such evidence was "the type of propensity evidence that [Rule 404(b)] prohibits"); *Palmer v. Nassan*, 454 F. App'x 123, 126 (3d Cir. 2011) (affirming exclusion of evidence of other excessive

force lawsuits that did nothing more to show "that if [the defendant] had used excessive force on past occasions, he was more likely to have used it here"); *Luka v. City of Orlando*, 382 F. App'x 840, 842-43 (11th Cir. 2010) (affirming exclusion of prior complaints of excessive force as improper evidence that the officer "characteristically engaged in the use of excessive force and acted in conformity with that characteristic"); *Ruffin v. City of Boston*, 146 F. App'x 501, 508 (1st Cir. 2005) (affirming exclusion of evidence of other instances in which the officer allegedly used excessive force as improper propensity evidence); *Nwegbo v. Borough*, No. 12-cv-05063, 2013 WL 3463504, at *2 (E.D. Pa. July 10, 2013) (excluding evidence of prior excessive force suits as "nothing more than an attempt to use allegations of prior acts to demonstrate a propensity"); *Washington v. Goshert*, No. 12-924, 2013 WL 1388723, at *1 (E.D. Pa. Apr. 5, 2013) (excluding evidence of an unrelated interaction that the defendant officer had with a third party "to show [the defendant's] propensity to stop vehicles and search their occupants without probable cause"); *Schinagel v. City of Albuquerque*, No. 07-cv-481-LH-RLP, 2009 WL 10696214, at *4 (D.N.M. Mar. 25, 2009) (rejecting evidence of "the use of force by Defendant Officers in prior and subsequent incidents, any Internal Affairs complaints, or civil rights lawsuits" where the evidence: (i) "amount[ed] to improper character propensity evidence under Rule 404(b)"; (ii) "would create a mini-trial within a trial and be a waste of time"; and (iii) "the danger of unfair prejudice and confusion of the issues substantially outweighs the probative value of the evidence"); *Eason v. Anoka-Hennepin East Metro Narcotics Violent Crimes Task Force*, No. 00-cv-311 (PAM/RLE), 2002 WL 1739666 at *3 (D. Minn. 2002) (excluding "evidence of prior complaints of or disciplinary actions for excessive force by officers involved in [plaintiff's] arrest" "because it would be nothing but an attempt to show that the officers had a propensity to use excessive force in violation of Fed. R. Evid. 404(b).").

Even if the Government's 404(b) evidence was relevant (which it is not), the relevance of that evidence would be substantially outweighed by the prejudice that would result from its admission in this case. *See*, *e.g.*, *United States v. Burkley*, 591 F.2d 903, 919 (D.C. Cir. 1978) (warning that when evidence of other crimes is admitted under Rule 404(b), the "other crimes must [still] be excluded if the danger of criminal propensity prejudice substantially outweighs the probative value of the evidence."); *Castro v. Cnty. of Los Angeles*, No. 2:13-cv-06631-CAS, 2015 WL 4694070, at *3 (C.D. Cal. Aug. 3, 2015) (excluding evidence of a prior excessive force lawsuit as it "would create a high risk that the jury would impermissibly find in favor of plaintiffs on the ground that [the officer] has a propensity for using excessive force, detracting from the relevant inquiry into whether [the officer] used excessive force against decedent on July 19, 2013"); *Foltz v. City of Largo*, No. 8:10-cv-759-EAJ, 2011 WL 3919737, at *2 (M.D. Fla. Sept. 11, 2011) (excluding highly prejudicial evidence relating to prior complaints of excessive force); *Palmer v. Nassan*, 10-cv-0922, 2011 WL 587982, at *1 (W.D. Pa. Feb. 10, 2011) (finding prior excessive force or police misconduct inadmissible under Rule 404(b) as its relevance was outweighed by its prejudice); *Thompson v. Mancuso*, No. 08-cv-3638, 2009 WL 2616713, at *3 (E.D. Pa. Aug. 25, 2009) (same); *Wichard v. Baylor*, No. 01-cv-148, 2004 WL 1490360, at *2 (E.D. Pa. July 1, 2004) (holding that evidence of the defendant officers' prior use of improper force could not be admitted because "the risk is too high that the jury, regardless of how well instructed, would conclude that, because these officers had used improper force on a prisoner before, they were more likely to have done so here"); *Schinagel*, 2009 WL 10696214, at *4 (rejecting evidence of prior misconduct and finding "the danger of unfair prejudice and confusion of the issues substantially outweigh[ed] the probative value of the evidence").

The D.C. Circuit's decision in *Hudson v. District of Columbia*, 558 F.3d 526 (2009) and

this Court's decision in *Rawlings v. District of Columbia*, No. 07-cv-1914 (PLF), 2011 WL 5325531 (D.D.C. Nov. 4, 2011), are instructive as to why the admission of the Government's propensity evidence in this case would be wholly improper.

In *Hudson*, two MPD officers appealed a jury verdict for civil rights violations and D.C. common law assault charges arising from a physical altercation during an arrest inside a residence. As summarized by the district court:

> Intent on arresting the youths, the officers attempted to force open the front door. As a result of the melee, Ms. Hudson, who was then 87 years old and had come downstairs to see what the ruckus was about, was accidentally knocked to the floor. Mr. Doreus helped her to the living room sofa. After the officers, then joined by backup, gained entry to the home, Officer Merritt encountered Mr. Clayton in the living room and struck him at least once with a metal baton, roughly three to four feet from where Ms. Hudson lay on the sofa. Mr. Clayton then managed to move into the kitchen, where he was handcuffed and taken into custody. Both Ms. Hudson and Mr. Clayton were taken to the hospital for medical treatment. Ms. Hudson sustained a head injury in her fall and stayed in the hospital for eight days. Mr. Clayton suffered a broken pinky finger and a lacerated forehead. A forehead scar remained visible at trial.

*Hudson v. District of Columbia*, 517 F. Supp. 2d 40, 43 (D.D.C. 2007).

At trial, the district court allowed the plaintiff's counsel to elicit testimony from the defendant police officer that the MPD Trial Board found that the defendant officer engaged in conduct unbecoming of a police officer in a previous unrelated encounter that the officer had with a woman at a nightclub. The D.C. Circuit held that evidence of the defendant officer's "history of anger, using improper use of force and filing false reports" should have been excluded under Rule 404(b):

> It was a violation of Rule 404(b) for the trial judge to permit Clayton's counsel to elicit testimony about Merritt's purported history of anger, using 'improper use of force' and filing 'false reports.' Such testimony is evidence of prior bad acts introduced 'to show action in conformity therewith' and is therefore prohibited under Fed. R. Evid. 404(b).

*Hudson*, 558 F.3d at 532 (citations omitted).

The D.C. Circuit also found that the admission of the defendant officer's history was not harmless because the "trial was hotly contested and turned largely on credibility." *Id.* The D.C. Circuit specifically referenced the MPD's trial boards findings[5] that were improperly admitted and noted that the district court compounded the prejudice by permitting the plaintiff's counsel to employ improper closing argument on the character of the officers based on the prior bad acts. *Id.* at 531-32.

Similarly, in *Rawlings*, this Court excluded evidence that the defendant officer was involved in two prior-off duty shootings. 2011 WL 5325531, at *1. The plaintiff sought to introduce evidence of the shootings as 404(b) evidence in a civil action for wrongful death of the plaintiff's son. *Id.* Relying on the D.C. Circuit's decision in *Hudson*, the district court granted the defendant's motion *in limine* and found that the prior shootings could not be used as evidence to show an officer "acted in conformity with a tendency to engage" in shootings. *Id.*

For these same reasons, the Government's purported 404(b) evidence should be excluded.

---

[5] "Under D.C. law, the mayor appoints 'trial boards' to try members of the MPD, D.C. Code § 5-133.06, and the chief of police "refer[s] to a trial board for adjudication charges brought against any member of the department,' D.C. Mun. Regs. tit. 6A, § 800.11." *Hudson*, 558 F.3d at 530 n.2.

**CONCLUSION**

For all these reasons, Officer Dupree respectfully requests that this Court deny the

Government's Motion to Admit Evidence of Prior Acts.

Dated: January 18, 2024                    Respectfully submitted,

                                           SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

                                           ___/s/ Christopher Macchiaroli_____
                                           Christopher Macchiaroli (D.C. Bar No. 491825)
                                           1750 K Street, NW, Suite 810
                                           Washington, D.C. 20006
                                           Telephone: (202) 539-2444
                                           Facsimile:  (410) 547-2432
                                           Email: cmacchiaroli@silvermanthompson.com

                                           *Counsel for Defendant Philip Dupree*