IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : :  : No. 22-cr-275-CKK : |
| v. | : : |
| PHILIP DUPREE, | : : |
| *Defendant*. | : : |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO
EXCLUDE IMPROPER, IRRELEVANT, AND PREJUDICIAL EVIDENCE AT TRIAL**

For nearly two years, Defendant Philip Dupree believed this case concerned the narrow issue of whether he engaged in excessive force when deploying his OC spray to control an arrestee who was actively resisting arrest following a valid traffic stop. Apparently, the Government wants to turn this case into a trial board to evaluate Officer Dupree's performance as a police officer, such as, whether he should have pursued a speeding vehicle on the D.C./Maryland border, whether the absence of his body worn camera ("BWC") video was a violation of department policy, and whether the location he transferred Torrence Sinclair to upon his arrest was proper.

This is not a police trial board, but a federal court, which evaluates violations of federal law. Testimony focusing on whether Officer Dupree violated departmental policy, *not* as to his use of force, but as to conduct before and after the use of force, is completely irrelevant to the issues charged in this case. If admitted before the jury, such testimony would create trials within trials, unduly prejudice Officer Dupree, and deny him the opportunity of a fair and just trial in this matter.

In light of the narrow contours of the facts and circumstances underlying the alleged use of force — the deployment of one shot of OC spray — this Court should preclude the Government from introducing evidence and argument from multiple categories of improper, irrelevant, and

prejudicial evidence, including: (i) whether certain unrelated actions taken by Officer Dupree complied with departmental practices and policies; and (ii) events transpiring after Mr. Sinclair's arrest that are unrelated to the allegation of unreasonable force.[1] The Government's Opposition (D.E. 46) fails to provide a sufficient factual and evidentiary basis for the admission of either of these categories of evidence. Regarding the evidence of Officer Dupree's alleged compliance or non-compliance with FHPD policies and procedures, the Government uses selective case citations to create the misleading impression that courts have routinely admitted evidence of *any* police department policies, notwithstanding that the cases only support admission of a department's *use of force* policies. Regarding evidence of events transpiring after Mr. Sinclair's arrest, the Government argues that these events are "intrinsic" to the charged offenses, citing only cases in the 404(b) context, or part of the "res gestae," a term previously used in the hearsay context, concepts which are not applicable here.[2]

The Government justifies all of its irrelevant evidence under the auspices that it establishes willfulness. None of the proffered evidence is relevant to whether Officer Dupree knew that, by deploying one shot of OC spray for an aggressive and resisting arrestee, he was violating the law

---

[1] Officer Dupree also moved to exclude evidence regarding his past employment, including any complaints he received, internal investigations of him, or adverse employment consequences, and other officers' training and knowledge of their department's policies unrelated to any policy governing Officer Dupree at the time of the incident. Because the Government seeks to incorporate by reference its 404(b) filings in responding to those claims, those areas of exclusion are conceded as to any matter not referenced in the Government's filings.

[2] The Government borrows from a familiar, yet unsuccessful playbook. In its recent section 242 civil rights prosecution in *United States v. Mark Clark*, 20-cr-151-CJN, the Government sought to introduce evidence of the defendant's failure to record BWC video through the entirety of one of the charged incidents, as well as, evidence of the defendant's failure to file a use of force report. However, that evidence and those claims were properly excluded from a trial regarding excessive force when the Court prohibited the Government from introducing Internal Affairs Division investigation reports relating to the charged incidents.

and the U.S. Constitution. A violation of a BWC policy or a pursuit policy does not enlighten an officer on whether the force he uses is excessive or not. Rather, consistent with its 404(b) claims, the Government wants to present a propensity argument, *i.e.*, if Officer Dupree violated one policy unrelated to his use of force, he probably violated the use of force policy. This Court and the Federal Rules of Evidence expressly prohibit such improper argument and evidence at trial. Accordingly, this Court should exercise its discretion and preclude the Government from referencing improper, irrelevant, and prejudicial evidence at trial.

## ARGUMENT

**I.     The Government Offers No Justifiable Legal Basis for the Admission of Evidence and Argument Relating to FHPD Policies Unrelated to the Use of Force.**

The Government wants to introduce at trial evidence and argument about purported violations of FHPD policies by Officer Dupree before, during, and after his arrest of Mr. Sinclair that are unrelated to the deployment of his OC spray.[3] The Government asserts that such evidence "shows that Dupree acted with the requisite intent or state of mind." *See* Gov't Opp'n at 2. According to the Government, "case law has established that such evidence is admissible in criminal cases where an officer is accused of criminal civil rights violations." *See id.* Though conceding that the cases it cites in support of this assertion only "address evidence of training and policies on the conduct constituting the alleged excessive use of force," *id.* at 3, the Government attempts to reframe those courts' rulings to support admission of *any* police policies or practices. When read in full, the cases cited by the Government support exclusion of evidence regarding

---

[3] Officer Dupree does not, as the Government suggests, "concede[] that this evidence amounts to a violation of (or 'non-compliance with') with FHPD policies and practices" (*see* Gov't Opp'n at 2). Instead, Officer Dupree proactively moves to preclude any reference to any *alleged* non-compliance based upon certain unsubstantiated allegations made by the Government in its discovery production.

3

FHPD policies other than those governing the use of force.

For example, the Government cites a Seventh Circuit decision for the proposition that "[e]vidence or testimony concerning police policies or practices . . . is appropriate in criminal cases where an officer is accused of violating '[Section] 242, which penalizes the *willful* deprivation of another's federal rights under color of law.'" *Id.* at 2 (quoting *United States v. Brown*, 871 F.3d 532, 538 (7th Cir. 2017)) (emphasis in *Brown*). The evidence at issue in *Brown*, however, was expert testimony describing "how the Chicago Police Department's 'Use of Force Model' applied to [the defendant's] confrontation with [a store employee]." *Brown*, 871 F.3d at 535. Thus, the Seventh Circuit's reasoning regarding the admissibility of testimony concerning police policies or practices did not encompass *all* policies and practices. Moreover, the Seventh Circuit ultimately upheld the district court's decision to exclude the proffered expert testimony, finding that "[a]n expert's explanation of the Chicago Police Department's Use of Force Model would have added nothing that the jurors could not ascertain on their own by viewing the surveillance videotape and applying their everyday experience and common sense." *Id.* at 539. Further distinguishing the *Brown* case from the present matter, the Government had moved to exclude the defendant's proposed expert testimony regarding departmental policies and practices. *Id.* at 535. Thus, an important consideration for the Seventh Circuit was the defendant's "constitutional right to a 'meaningful opportunity to present a complete defense.'" *Id.* at 538 (citation omitted). The same consideration is not applicable here, where Officer Dupree has moved to exclude testimony regarding FHPD policies and practices other than those governing the use of force.

To further illustrate, the Government cites to *United States v. Proano*, 912 F.3d 431 (7th Cir. 2019), another Seventh Circuit decision, for the proposition that "an officer's training can help inform his state of mind in certain circumstances." Gov't Opp'n at 3 (citing *Proano*, 912 F.3d at

4

439). Similar to *Brown*, the testimony and evidence at issue in *Proano* related to the use of force policies of the Chicago Police Department and the department's firearms training. *Proano*, 912 F.3d at 436. Both areas of testimony directly related to the conduct constituting the defendant officer's alleged excessive use of force — firing sixteen shots at a moving sedan filled with teenagers. *See id.* at 434. By the same reasoning, in this case, the Government should be limited to introducing testimony and evidence regarding FHPD policies and practices governing the conduct constituting Officer Dupree's alleged excessive use of force, *i.e.*, his deployment of his OC spray.

Moreover, contrary to the Government's contentions, evidence regarding purported violations of FHPD policies and practices fails the balancing test under Federal Rule of Evidence 403. The Government states that it "intends to offer evidence at trial of FHPD policies and expert opinions that Dupree violated said policies . . . only to show Dupree's state of mind and knowledge[.]" Gov't Opp'n at 6. Any probative value of this evidence, however, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, particularly when the Government intends to offer this testimony in the form of an expert opinion. In a section 242 case, "[t]he jury's task is to determine how a reasonable officer would act in the circumstances, not how an officer in a particular local police department would act." *Brown*, 871 F.3d at 538. Presenting the jury with expert testimony regarding other purported policy violations, such as the jurisdiction of the traffic stop, the vehicle used, and the location where Mr. Sinclair was brought to be booked, would only serve to unfairly prejudice Officer Dupree and mislead the jury as to the very limited issue it is being asked to consider.

The Government's final argument is that alleged violations of FHPD policy are relevant to the obstruction of justice charge. *See* Gov't Opp'n at 6. In particular, the Government contends

5

that "Dupree's failure to submit a detailed use of force report consistent with his training and policy, is evidence of a guilty conscience and is probative of whether he intentionally engaged in misleading conduct." *Id.* at 7. But, whether Officer Dupree submitted a "detailed" use of force report to the FHPD has no bearing on whether he "intentionally submitted a statement of probable cause . . . to a Maryland state commissioner that falsely reported the circumstances surrounding and justifying [his] use of pepper spray," as charged in Count Two of the Indictment. The Government's claim that Officer Dupree's conduct *after* the use of force is evidence that he knew the force used was excessive defies logic, just as it is illogical to think that Officer Dupree wanted to punish Mr. Sinclair so much that he did not engage in excessive force during his initial encounter with Mr. Sinclair before there were multiple witnesses, but instead chose to wait until the absolute end of the encounter, while surrounded by law enforcement and civilian witnesses, at least two of whom were recording videos, and to deploy OC spray into his own vehicle. The Government will go to extreme lengths to get any piece of evidence before the jury to buttress its extremely weak claim of excessive force, which is confirmed by Maryland authorities abandoning the state prosecution of Officer Dupree on the eve of trial.

For all of these reasons, this Court should grant Officer Dupree's motion *in limine*.

## II. The Government Fails to Provide an Adequate Basis for Admission of Evidence Regarding Facts and Circumstances Outside the Alleged Use of Excessive Force.

Officer Dupree also asks the Court to preclude any testimony or evidence regarding the events that occurred after Officer Dupree and Mr. Sinclair left the scene. The Government first argues that these events are admissible because they are "intrinsic" to the charged offenses, but only cites to cases in the Rule 404(b) context, which are not directly applicable here.[4] *See* Gov't

---

[4] In the three cases cited by the Government to suggest that the evidence is admissible as "intrinsic" — *United States v. Roberson*, 581 F. Supp. 3d 65 (D.D.C. 2022), *United States v. Alexander*, 331

6

Opp'n at 7-8. The Government further contends that Mr. Sinclair's "prolonged detention at the FHPD station . . . is part of the *res gestae*," relying on a hearsay concept that is similarly inapplicable.[5] *Id.* at 7. Misplaced case law aside, the Government fails to provide an adequate basis for admission of evidence regarding events that occurred well after the use of force at issue. "The reasonableness of a use of force turns on whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation." *Williams v. City of Burlington, Iowa*, 27 F.4th 1346, 1351 (8th Cir. 2022). Accordingly, statements Officer Dupree is alleged to have made in the hours after he left the scene where he allegedly used excessive force have no bearing on the charged offenses. They do not make the deployment of the OC spray more or less reasonable under the circumstances. Likewise, simply because Officer Dupree filled out his statement of probable cause while Mr. Sinclair was at the station, does not make the manner of the transport to the station or Officer Dupree's statements at the station relevant to the allegation of obstruction through the drafting of the statement of probable cause (assuming a federal nexus even exists to sustain such an unsubstantiated and speculative charge).

For all these reasons, this Court should grant Officer Dupree's motion *in limine* and limit the testimony and evidence to the facts present at the scene of Mr. Sinclair's arrest.

---

F.3d 116 (D.C. Cir. 2003) and *United States v. Bowie*, 232 F.3d 923 (D.C. Cir. 2000) — the courts were discussing the distinction between "intrinsic" and "extrinsic" evidence in the context of Rule 404(b), not in the context of general admissibility.

[5] *See Wabisky v. D. C. Transit Sys., Inc.*, 309 F.2d 317, 318 (D.C. Cir. 1962) ("There are at least four distinct exceptions to the hearsay rule encompassed by the term *res gestae*: (1) declarations of present bodily condition; (2) declarations of present mental state and emotion; (3) excited utterances; (4) declarations of the present sense impression.").

## CONCLUSION

For all these reasons, Officer Dupree respectfully requests that this Court grant his Motion *in Limine* to Exclude Improper, Irrelevant, and Prejudicial Evidence at Trial (D.E. 45).

Dated: April 22, 2024

Respectfully submitted,

**SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC**

 /s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
1775 I Street, NW, Suite 1150
Washington, DC 20006
Telephone: (202) 539-2444
Facsimile:  (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

*Counsel for Defendant Philip Dupree*