**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 22-cr-275-CKK |
| | : | |
| v. | : | |
| | : | |
| PHILIP DUPREE, | : | |
| | : | |
| *Defendant.* | : | |

## DEFENDANT'S PRETRIAL MEMORANDUM

Defendant Philip Dupree, through his undersigned counsel, submits this memorandum in advance of the parties' pretrial conference scheduled for May 31, 2024 and in response to the Government's Trial Memorandum dated May 24, 2024 (D.E. 73).

## INTRODUCTION

Officer Dupree identifies several deficiencies in the Government's anticipated evidence at trial and previews certain admissibility issues (all previously raised with the Government) to ensure that the upcoming trial is devoid of surprise or prejudice, and to ensure that this Court has a full opportunity to consider these matters as early as possible to prevent an unnecessarily longer trial, with needless bench conferences and curative instructions. In response to the Government's lengthy Trial Memorandum, Officer Dupree also identifies his position in response to certain of the claims made by the Government. Officer Dupree and undersigned counsel are available as long as necessary in advance of trial to address as many of the pending issues as possible so that the Court has a sufficient factual basis on which to resolve the disputed issues and any appellate court has a sufficient record on which to review those rulings to the extent necessary.

## ARGUMENT

**I.     Count Two of the Indictment Is Not Proper in This Venue.**

Count Two of the Indictment alleges that Officer Dupree violated 18 U.S.C. § 1512(b)(3),

by allegedly "knowingly engag[ing] in misleading conduct toward[s] another person with intent

to hinder, delay, and prevent the communication" to "the Federal Bureau of Investigation of

information" concerning "the use of unreasonable force." Indictment, ¶¶ 7-8 (D.E. 1). To obtain a

conviction under 18 U.S.C. § 1512(b)(3), the Government "must establish beyond a reasonable

doubt that the defendant knowingly and willfully (1) engaged in misleading conduct toward

another person, (2) with the intent to hinder, delay or prevent the communication of information

to a federal law enforcement officer or federal judge, (3) about the commission or the possible

commission of a federal crime." *United States v. Hawkins*, 185 F. Supp. 3d 114, 124 (D.D.C. 2016)

(quoting *United States v. Veal*, 153 F.3d 1233, 1253 (11th Cir. 1998)).

Pursuant to the Supreme Court's holding in *Fowler v. United States*, a violation of 18

U.S.C. § 1512(b)(3) is established where there is "a *reasonable likelihood* that a relevant

communication would have been made to a federal officer." *Fowler v. United States*, 563 U.S.

668, 670 (2011) (emphasis in original).[1] *See also United States v. Gatlin*, 90 F.4th 1050, 1063

(11th Cir. 2024) (quoting *Fowler*, 563 U.S. at 670); *United States v. Chafin*, 808 F.3d 1263, 1274-

75 (11th Cir. 2015) (finding plain error where a district court failed to apply the *Fowler* reasonable-

possibility standard to a violation of § 1512(b)(3)). The Supreme Court emphasized the importance

---

[1] The Supreme Court in *Fowler* interpreted 18 U.S.C. § 1512(a)(1), a different subsection of the federal witness tampering statute than the one at issue in this case. In the wake of *Fowler*, courts have "repeatedly acknowledged" the similarity of the elements in subsections (b)(3) and (a)(1)(C). *See United States v. Williams*, 825 F. Supp. 2d 128, 134 n.4 (D.D.C. 2011). Consequently, as this Court previously recognized, "the Supreme Court's reasoning and holding in *Fowler* regarding the elements of 18 U.S.C. § 1512(a)(1)(C) are equally applicable to 18 U.S.C. § 1512(b)(3)." *Id.*

of this federal jurisdictional element, opining that:

> to allow the Government to show no more than the broad indefinite intent we have described (the intent to prevent communications to law enforcement officers in general) would bring within the scope of this statute many instances of witness tampering *in purely state investigations and proceedings*, thus extending the scope of this federal statute well beyond the primarily federal area that Congress had in mind.

563 U.S. at 674-65 (emphasis added).

Congress enacted 18 U.S.C. §§ 1503 and 1512 to proscribe federal obstruction of justice. Most provisions of § 1512 require an official proceeding. *See* 18 U.S.C. §§ 1512(a)(1)(A)-(B), (2)(A)-(B), (b)(1)-(2), (c), (d)(1). Similarly, § 1503 references a "proceeding" and applies primarily to officers and jurors in official proceedings. *See* 18 U.S.C. § 1503. Other subsections of § 1512—including § 1512(b)(3), which is at issue in this case—do not require an official proceeding. "[U]nlike § 1512(b)(2), § 1512(b)(3) makes no mention of 'an official proceeding' and does not require that a defendant's misleading conduct relate in any way either to an 'official proceeding' or even to a particular ongoing investigation." *United States v. Ronda*, 455 F.3d 1273, 1288 (11th Cir. 2006).

Congress enacted 18 U.S.C. § 1512(i) to identify the proper venue for obstruction cases. Section 1512(i) provides that "[a] prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected ***or in the district in which the conduct constituting the alleged offense occurred***." 18 U.S.C. § 1512(i) (emphasis added). In this case, the official proceeding prong is not applicable, as the charged offense does not require an actual or potential official proceeding. Even it was, which it is not, it is well established that an FBI investigation does not constitute an official

proceeding.[2] In its Trial Memorandum, the Government applies a sleight of hand and omits the second section of the venue provision and cites only the official proceeding section. *See* Gov't Trial Mem. at 18 ("A prosecution under this section . . . may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected . . . .").

Here, it is undisputed that the allegations the Government believes constituted obstruction, *i.e.*, the drafting of the probable cause statement, the swearing to the probable cause statement, and the presentation of the probable cause statement to a Maryland commissioner all occurred in the State of Maryland and not in the District of Columbia.[3] To eliminate any doubt as to where the

---

[2] *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 425-26 (4th Cir. 2019) (stating "FBI investigations[] are not official proceedings" and finding an investigation by the United States Attorney's office, which led to criminal charges, not to be an official proceeding); *United States v. Ermoian*, 752 F.3d 1165, 1171 (9th Cir. 2013) (finding an FBI investigation not to be an official proceeding); *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019) (same); *United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008) (finding internal investigation by administrative agency into employee conduct not to be an official proceeding); *United States v. Guertin*, No. 21-cr-262 (TNM), 581 F. Supp. 3d 90, 100 (D.D.C. 2022) (citing *Ermoian*, 752 F.3d at 1171, as "holding a criminal investigation is not an 'official proceeding,' even though it might *lead to* an 'official proceeding' like a federal grand jury or criminal trial" (emphasis in original)), *aff'd*, 67 F.4th 445 (D.C. Cir. 2023); *United States v. Puma*, 21-cr-454 (PLF), 2022 WL 823079, at *6 (D.D.C. Mar. 19, 2022) (requiring "something more than law enforcement investigative activities or an agency's internal investigation"); *United States v. Sandlin*, No. 21-cr-88-DLF, 2021 WL 5865006, at *3 (D.D.C. Dec. 10, 2021) ("[N]either FBI investigations, nor internal agency investigations qualify as 'official proceedings.'" (citations and punctuation omitted)).

[3] The Government's vague and unsupported assertion in its Trial Memorandum (at 18) that "the obstruction of justice offense was properly charged in the District of Columbia because the defendant engaged in misleading conduct to cover-up his use of excessive force in the District" is contrary to the Government's prior assertions that the "misleading conduct" underlying Count Two occurred at the FHPD station. *See, e.g.*, Gov't Mot. to Admit Prior Acts Evidence at 2 (D.E. 32) ("Following his excessive use of force in D.C., the Defendant transported T.S. to *the Fairmount Heights Police Department ('FHPD')*, where the Defendant authored a falsified probable cause statement[.]" (emphasis added)); Gov't Opp'n to Def. Mot. in Limine at 7 (D.E. 46) (". . . T.S.'s prolonged detention *at the FHPD station*, . . . includes the period during which Dupree engaged in obstructive conduct as charged in Count Two."). *See also* Mem. Op. at 2 (D.E. 64) ("The Government contends that Defendant transported T.S. to *the FHPD*, where Defendant then wrote

alleged conduct occurred or should be resolved, the State of Maryland charged Officer Dupree with perjury offenses relating to his probable cause statement, only to recently abandon that prosecution and place the entire case on the stet docket. *See* Maryland Indictment, Counts 5-12 (attached hereto as Exhibit 1). Maryland's decision to investigate, bring charges, and then abandon those charges further emphasizes that any criminal consequences for allegedly false statements regarding a Maryland traffic offense would have been adjudicated in a Maryland prosecution and not in a federal civil rights case in the District of Columbia, where the underlying conduct did not occur and the arrestee was never charged.

Having conceded that no operative facts underlying the alleged obstruction occurred in Washington, D.C., the Government intends to proceed on an "effects" theory of venue, specifically, that Officer Dupree's actions were taken for the purpose of effecting the obstruction of some future federal investigation of his own use of force that would have occurred in Washington, D.C. and not in Maryland, where the purported arrestee would have been prosecuted. Unfortunately for the Government, 18 U.S.C. § 1512(i) does not permit such a basis for venue.

The Government applied a similar theory in its recent prosecution of former Congressman Jeffrey Fortenberry regarding alleged false statements. In that case, as here, the Government argued that this Court should read into the statute an effects venue provision that was not codified in the relevant portion of the statute. Although the prosecution resulted in a conviction under 18 U.S.C. § 1001(a)(2) in the Central District of California, that conviction was ultimately reversed and vacated for improper venue. *See United States v. Fortenberry*, 89 F.4th 702 (9th Cir. 2023). In vacating the conviction, the Ninth Circuit in *Fortenberry* held that:

---

and submitted a probable cause statement to a Maryland state commissioner . . . , which the Government contends was false" (emphasis added)).

> But those situations are markedly different from a Section 1001 offense, for which no statute nor universal recognition permits a prosecution where the effects of a statement are felt, and serve only to illustrate that Congress is well equipped to identify the circumstances in which an effects-based venue rule is appropriate. Congress did not deem Section 1001 to be such a situation.

89 F.4th at 711. *Fortenberry* thus stands for the proposition that the Government cannot circumvent the venue statute in contradiction of its express language. If Congress wanted to disregard the well-established legal principle that venue occurs where the crime was committed, it would have chosen to do so and in this subset of the statute it did not. Accordingly, this Court should also decline to read into the statute an effects venue provision, particularly when the statute clearly provides a default for venue in the location when the conduct occurred.

The Government also cannot justify having Count Two of the Indictment brought in this jurisdiction simply because its case agents investigating the case are based in Washington, D.C. That argument was similarly rejected by the Ninth Circuit in its decision in *Fortenberry*:

> The only connection between Fortenberry and the Central District of California, where he was tried and convicted, was that the agents worked in a Los Angeles office. . . . This outlandish outcome cannot be squared with the Constitution. The Venue and Vicinage Clauses command that a trial be held where the crime was committed.

89 F.4th at 709 (citations and punctuation omitted).

The legal defense of improper venue, raised in the parties' proposed Jury Instructions (D.E. 65 at 77 n.10), is not perfunctory. "Questions of venue in criminal cases . . . are not merely matters of formal legal procedure;" rather, they present policy concerns deeply rooted in the Constitution. *United States v. Johnson*, 323 U.S. 273, 276 (1944). "Aware of the unfairness and hardship to which trial in an environment alien to the accused exposes him," *id.* at 275, the Framers drafted the Venue Clause, which "mandates that the 'Trial of all Crimes . . . shall be held in the State

where the . . . Crimes shall have been committed.'" *Smith v. United States*, 599 U.S. 236, 242-43 (2023) (quoting U.S. Const. art. III, § 2, cl. 3).

In this case, Count Two of the Indictment, to the extent such a claim is even plausible, should have been brought in the United States District Court for the District of Maryland. Bringing the charge in the proper venue would create no burden or prejudice to the Government, as it has currently charged Officer Dupree with other offenses in that jurisdiction. *See United States v. D'Haiti, et al.*, 21-cr-00284-LKG (D. Md.) (scheduling trial for Officer Dupree on January 7, 2025, while proceeding with the lead defendants first in a separate trial to commence in June 2024).

## II.     The Defense Is Aware of No Trial Exhibit or Witness That Can Establish the Government's Allegations in Its Indictment to Support Count Two of the Indictment.

In reviewing the Government's witness and exhibit lists, there is no factual basis on which the Government can establish that it was "likely" that a probable cause statement made to a Maryland Commissioner would "be transferred to a federal officer" or that the probable statement at issue, which acknowledged the use of OC spray, would "hinder, delay, and prevent communication to the Federal Bureau of Investigation of information" establishing a potential federal crime. Mem. Op. at 6 (D.E. 55); *United States v. Ring,* 628 F. Supp. 2d 195, 222 (D.D.C. 2009); Indictment, ¶ 8.

As for the Government's argument that Officer Dupree should have known that any use of force in excess of law enforcement policy could subject him to federal prosecution, the Government will be unable to introduce a single exhibit or witness confirming that Officer Dupree *ever* received the use of force policy that the Government intends to introduce into evidence as a basis for his willful conduct.[4] Accordingly, Officer Dupree anticipates renewing his request for

---

[4] Allowing such legally deficient evidence to be presented to the jury would allow a federal obstruction claim in every instance of purely state conduct where the Department of Justice

dismissal of Count Two after the Government's opening statement (assuming not dismissed on venue grounds). To avoid undue prejudice, Officer Dupree again requests that this Court require the Government to proffer how it will offer sufficient evidence on which a reasonable trier of fact could find guilt beyond a reasonable doubt on Count Two of the Indictment *before* allowing the Government to raise in opening statements claims it will not be able to establish beyond a reasonable doubt.

### III.    The Government Should Be Precluded from Offering Self-Serving Hearsay from Mr. Sinclair as to Alleged Excessive Force Outside the Conduct Alleged in the Indictment.

In its Indictment, the Government alleges that Officer Dupree engaged in unreasonable force in violation of the U.S. Constitution when using "a dangerous weapon—that is, pepper spray—against [Torrence Sinclair] without any legitimate law enforcement purpose, resulting in bodily injury to [Torrence Sinclair]." Indictment, ¶ 6. In its Trial Memorandum (at 6), the Government erroneously claims that Officer Dupree sought no medical assistance for Mr. Sinclair after he was sprayed once with OC spray. That is incorrect.

As confirmed in the radio run from the incident, identified as Government Exhibit 200, Officer Dupree requested medical personnel to respond to the scene. In a report of internal investigation of the incident (US00006714), Investigator Kenneth Bragg also confirmed that Officer Dupree "requested fireboard for an OC Deployment." Thereafter, Prince George's County emergency medical technicians ("EMTs") responded to the scene and examined Mr. Sinclair to the best of their ability, notwithstanding Mr. Sinclair's assaultive and threatening responses to them. A photograph of EMTs responding to the scene (*see* GX 101 at 5:58) and waiting for Mr. Sinclair to stop being belligerent is below:

---

subsequently disagrees with an officer's written description of the facts underlying his arrest or use of force.



In its Trial Memorandum, the Government also acknowledges what the defense has suspected all along, that it has absolutely no intention of presenting Mr. Sinclair to the jury during the trial in this case. *See* Gov't Trial Mem. at 19 (noting its intention not to call Mr. Sinclair and seeking to preclude the defense from calling him to impeach his credibility). Given Mr. Sinclair's various conflicting statements regarding his active resistance and threats to law enforcement during Officer Dupree's traffic stop, and his various unsubstantiated allegations of what occurred to him on the evening in question and the injuries he allegedly suffered, it is of no surprise that the Government is choosing not to sponsor its complainant at trial, just as the State of Maryland decided to abandon its prosecution of Officer Dupree on related offenses.

Notwithstanding its refusal to call Mr. Sinclair as a witness, the Government still seeks to backdoor Mr. Sinclair's unsubstantiated and self-serving claims in his medical records that Officer Dupree further injured Mr. Sinclair when driving him to the police station by constantly stopping short on purpose. *See* GX 305 at US00004355, 4359, 4364 ("Pt reports that the Police Officer kept slamming on the brakes causing him to jerk forward & backwards several times."); *id.* at 4364 ("Also states that the officer would drive very fast and then slam on his brakes he was having the

patient hit the dash."). Even if these claims were true, which they are not, Count One of the Indictment alleges unreasonable force, and resulting injury, by the use of OC spray. It does not allege unreasonable and excessive force in the way Mr. Sinclair was transported to the station or how he was treated at the station. Without Mr. Sinclair taking the stand, the Government should be precluded from allowing conduct not charged in Count One to be presented to the jury or to serve as proof of the element of bodily injury. Accordingly, the medical records should be excluded as not relevant to the charged conduct in this case or, at a minimum, the records should be heavily redacted.

## IV.   The Government's Case Agent for the Majority of the FBI's Investigation Is a Necessary Witness for the Defense.

Federal Bureau of Investigation ("FBI") Special Agent ("SA") Michael Miller was the lead investigator and initial case agent in the Government's investigation in this case. Although the Government issued a trial subpoena to SA Miller in preparation for trial, the Government now claims that it has no intention of calling its own lead investigator and initial case agent. When the defense also identified SA Miller as a witness, the Government informed the defense that, notwithstanding the Government's trial subpoena for his appearance at trial, SA Miller will be out of the jurisdiction from June 7 to June 20, 2024 — basically the entire duration of the trial in this case.

SA Miller was present for and created numerous reports regarding interviews of the Government's witnesses and, therefore, would be an essential defense impeachment witness on key exculpatory points that are strikingly omitted from the Government's Trial Memorandum. For example, Metropolitan Police Department ("MPD") Officer Lancelot Francioni, when interviewed by SA Miller on July 17, 2020, stated that he "did not see exactly what led to TORRENCE being pepper sprayed because the open passenger door was blocking his view of TORRENCE." *See* Def.

Ex. 11. Also noteworthy to Officer Dupree's defense, MPD Officer Francioni told SA Miller:

> DUPREE later attempted to put TORRENCE back in the vehicle, but TORRENCE resisted. Francioni described TORRENCE as contorting his body in an effort to resist being put in the vehicle. DUPREE then sprayed TORRENCE in the face with pepper spray.

*Id.* In response to further questioning by SA Miller, MPD Officer Francioni confirmed that "if TORRENCE did try to bite DUPREE, Francioni believed that would justify the use of pepper spray." *Id.* Moreover, when asked about the jurisdiction of Officer Dupree's traffic stop of Mr. Sinclair, MPD Officer Francioni, who is a police officer in Washington, D.C., believed the traffic stop had occurred *in Maryland:*

> Agents asked Francioni why he thought the stop occurred in Maryland. Francioni replied that during field training, he was taught that everything on the *north east side of Eastern Avenue was Maryland*, and everything on the south west side of the middle of Eastern Avenue was the District of Columbia dividing line being the center of Eastern Avenue. DUPREE's traffic stop occurred on the *north east side of the road*.

*Id.* (emphasis added). Similarly, Prince George's County Officer Jason Buie, when interviewed by SA Miller on August 31, 2020, told the FBI that he "did not see what prompted the use of OC spray, but the subject was being disorderly, shaking the vehicle, and attempting to get out," events that the Government in its Trial Memorandum claims did not occur. *See* Gov't Trial Mem. at 10.

SA Miller's presence for Mr. Sinclair's interviews further confirms that his presence is necessary at trial. For example, Mr. Sinclair has claimed that he was handcuffed the entire time while at the police station and that he was left unattended in a dark building. A photograph of Mr. Sinclair shows him sleeping in an office chair in a well-lit room, without handcuffs, and with no visible injuries. *See* GX 307.

Also, SA Miller interviewed the EMT personnel who responded to the scene who confirmed that the phrase "no patient contact," included in the report for Mr. Sinclair, "is used in

reports when they [are] unable to fully assess a patient by taking the patient's blood pressure and other vitals signs; it does not mean they had zero contact with the patient." US00004384-85. In GX 304, the EMTs' report regarding Mr. Sinclair, the Government attempts to introduce the same phrase to establish the erroneous claim that Mr. Sinclair never received any medical attention on scene.

The above-referenced witnesses' statements made when speaking to law enforcement closer in time to the event have changed following conversations with the prosecutors in this case. Accordingly, SA Miller is necessary to impeach those if they deviate from their initial statements and descriptions of the events at issue in this case.

To avoid unnecessary delays in trial, and to avoid disrupting SA Miller's scheduled leave, undersigned counsel inquired of Government counsel on May 22, 2024 whether the Government would agree to stipulate that the statements contained in FBI-302s from witness interviews could be admitted into evidence if they impeached any witness's trial testimony. While the Government said it would consider the request, no response has been received as of the time of filing the present memorandum. Accordingly, SA Miller remains an essential witness to the defense at trial.

## V.   There Are Numerous Objections to the Government's Trial Exhibits That, if Not Resolved Pretrial, Will Unduly Prejudice Officer Dupree's Ability to Receive a Fair Trial in This Case.

The Government's Trial Exhibits, some of which still continue to be supplemented and amended, contain inadmissible and highly prejudicial and irrelevant information.

For example, through Government Exhibit GX 300, the Government is attempting to backdoor in additional purported 404(b) evidence pertaining to an incident involving Eric Anthony Wilson that was not referenced in the Government's 404(b) notice nor addressed in this Court's Order holding in abeyance its rulings on the admissibility of such evidence. As another example,

Government Exhibit GX 400 (at US00001943) appears to be a chart created by a recipient of a Government subpoena that the Government seeks to introduce as a business record. This document is not a business record, is not relevant, and should be excluded. The defense intends to raise these objections on top of objections to the Government's intent to introduce information that is irrelevant or otherwise prejudicial to Officer Dupree, such as policies unrelated to the use of force (GX500-505, 507-509); letters relating to the suspension and termination of Officer Dupree (GX416-417); and evidence relating to alleged 404(b) conduct, the admissibility of which this Court has reserved ruling on at this stage of the case (GX300, 302, 303), and which should not be referenced in the Government's opening statement at trial.[5]

## VI.    Officer Dupree Intends to Cross-Examine Government Witnesses Regarding Potential Bias and With Impeachable Convictions.

The Sixth Amendment guarantees a criminal defendant the right to cross-examine the witnesses against him or her, and it is "the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974); U.S. Const. amend. VI. "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (quoting *Davis*, 415 U.S. at 318).

### A.    Bias.

The right of a defendant "to present a complete defense . . . includes the guarantee of 'a

---

[5] Officer Dupree also has reserved several authenticity and relevancy objections to the Government's proposed trial exhibits.

full and fair' opportunity to show that the government's witnesses are biased.'" *Martinez v. United States*, 982 A.2d 789, 794 (D.C. 2009) (quoting *McDonald v. United States*, 904 A.2d 377, 381 (D.C. 2009)). The district court must "give a defendant a 'realistic opportunity to ferret out a potential source of bias.'" *United States v. Davis*, 127 F.3d 68, 70 (D.C. Cir. 1997) (quoting *United States v. Derr*, 990 F.2d 1330, 1334 (D.C. Cir. 1993)). A motive to lie is clear where a witness is under suspicion by the government for another matter and therefore may be motivated to "slant his testimony in favor of the government" to "curry favor." *Martinez*, 982 A.2d at 794 (quoting *Beynum v. United States*, 480 A.2d 698, 707 (D.C. 1984)). Furthermore, "the refusal to allow any questioning about the facts indicative of bias . . . is an error of constitutional dimension, violating the defendant's rights secured by the Confrontation Clause." *McDonald*, 904 A.2d at 794. It is also "common sense that, when a witness is involved in an ongoing investigation, the fact that the witness was being investigated at all can be the source of a potential motive for testifying in a biased manner so as to 'curry favor' with the investigators" because "[b]ias" "is almost always a permissible area of cross-examination." *United States v. Moore*, 589 F. Supp. 3d 87, 92-93 (D.D.C. 2022) (citation and punctuation omitted).

As will be discussed at the parties' pretrial conference, a number of the Government's witnesses were the subject of investigations during the pendency of this case, have pending cases with the U.S. Attorney's Office in Washington, DC, and/or are currently in drug treatment programs, all of which would be the proper subject of cross-examination by Officer Dupree at trial.

**B.    Impeachable Convictions.**

Rule 609 of the Federal Rules of Evidence governs the admissibility of criminal convictions for impeachment purposes. Pursuant to that Rule, there are two ways in which such

14

evidence may be admitted. *First*, under Rule 609(a)(1), evidence of prior criminal convictions may be introduced to impeach a witness where the conviction was for a crime "punishable by [death or] imprisonment in excess of one year," *i.e.*, a felony offense, with admissibility subject to the Court's Rule 403 analysis. *See* Fed. R. Evid. 609(a)(1)). A separate analysis occurs if the conviction is older than ten years. *See* Fed. R. Evid. 609(b). *Second*, "evidence that a witness has been convicted of a crime involving 'dishonesty or false statement' must be admitted regardless of the severity of the punishment or any resulting prejudice." Fed. R. Evid. 609(a)(2). Congress emphasized that the second prong of Rule 609(a) was meant to refer to convictions peculiarly probative of credibility, such as those for perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully. *See United States v. Smith*, 551 F.2d 348, 362 (D.C. Cir. 1976).

As will be discussed at the parties' pretrial conference, a number of the Government's witnesses have impeachable convictions, including, convictions for passing a bad check and conspiracy to commit motor vehicle theft, which are admissible on cross-examination pursuant to Fed. R. Evid. 609(a)(2).

## CONCLUSION

Count Two of the Indictment should be dismissed in advance of trial and, as it pertains to Count One of the Indictment, the Government will not be able to establish that the deployment of one shot of OC spray in response to continuous resistance constituted unreasonable force under national police standards. Moreover, in the absence of such evidence, the Government should be prohibited from presenting improper propensity evidence and evidence unrelated to Office Dupree's conduct on the day in question.

Dated: May 28, 2024                    Respectfully submitted,

                                       **SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC**

                                       ___/s/ Christopher Macchiaroli_____
                                       Christopher Macchiaroli (D.C. Bar No. 491825)
                                       1775 I Street, NW, Suite 1150
                                       Washington, D.C. 20006
                                       Telephone: (202) 539-2444
                                       Facsimile:  (410) 547-2432
                                       Email: cmacchiaroli@silvermanthompson.com

                                       Emma J. Mulford (Bar No. MD0146)
                                       400 East Pratt Street, Suite 900
                                       Baltimore, MD 21202
                                       Telephone: (410) 385-6249
                                       Facsimile: (410) 547-2432
                                       Email: emulford@silvermanthompson.com

                                       *Counsel for Defendant Philip Dupree*