UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

PHILIP DUPREE,

Defendant.

Criminal No. 22-275 (CKK)

**MEMORANDUM OPINION**
(May 29, 2024)

Pending before the Court is Defendant Philip Dupree's [45] Motion in Limine to Exclude Improper, Irrelevant and Prejudicial Evidence. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court shall **DENY** Defendant's motion to preclude the Government from introducing evidence of whether Defendant was outside his jurisdiction when he arrested T.S. in the District of Columbia, whether Defendant violated Fairmount Heights Police Department ("FHPD") policy by not turning on his body-worn camera, whether Defendant's use of his personal vehicle rather than a FHPD police cruiser was proper, and whether Defendant violated FHPD policy by taking T.S. to the FHPD station.

The Court shall **DENY** Defendant's motion to preclude the Government from introducing

---

[1] The Court's consideration has focused on the following documents:
- Indictment, ECF No. 1;
- Defendant's Motion in Limine, ECF No. 45 ("Def.'s Mot.");
- Government's Opposition to Defendant's Motion in Limine, ECF No. 46 ("Gov.'s Opp'n");
- Defendant's Reply in Support of Motion in Limine, ECF No. 53 ("Def.'s Reply");
- Government's Supplemental Response, ECF No. 61 ("Gov.'s Suppl. Opp'n");
- Defendant's Reply to Government's Supplemental Response, ECF No. 68 ("Def.'s Reply to Gov.'s Suppl. Opp'n").

1

evidence that Defendant allegedly brought T.S. to the FHPD station instead of directly to DOC and evidence of the statements allegedly made by Defendant to T.S. during that intervening period.

The Court shall **DENY AS MOOT** Defendant's motion seeking to exclude evidence of his prior employment under Federal Rule of Evidence 403, as it is addressed by the Court's ruling in its [63] Order.

Finally, the Court shall **GRANT** Defendant's motion regarding testimony of officers not employed by FHPD and holds that such eyewitness law enforcement officers can only provide lay opinion testimony.

## I. BACKGROUND

According to the Indictment, Defendant Philip Dupree was a sworn officer of the FHPD, a law enforcement agency in the state of Maryland. Indictment ¶ 1. He had approximately eight years of experience as a law enforcement officer and was trained in and aware of his duty not to use unreasonable or excessive force against arrestees in violation of their Fourth Amendment rights. *Id.* ¶ 2.

Beginning on August 3, 2019 and extending into August 4, 2019, Defendant was on duty as a uniformed FHPD officer assigned to vehicular patrol. *Id.* ¶ 3. He was using his personal vehicle rather than an official FHPD police cruiser. Gov.'s Opp'n at 4. At about 1:11 AM on August 4, 2019, Defendant observed a motor vehicle allegedly traveling at a high rate of speed heading toward the Washington, D.C. border. Def.'s Mot. at 4. Defendant conducted a traffic stop, which took place in Washington, D.C. *Id.* The motor vehicle was operated by an individual referred to as T.S., and T.S.'s sister was seated in the passenger seat. *Id.* Defendant almost immediately requested back-up after initiating the traffic stop. *Id.* T.S.'s sister called 911 and reported that an officer was attempting to arrest T.S. *Id.* Defendant's police assistance soon

arrived, as well as an officer from the Metropolitan Police Department based on the 911 call. *Id.*

Defendant alleges that a series of events occurred, in which T.S. and his sister exhibited "belligerent and aggressive behavior toward [him]." *Id.* at 5. Although T.S. was handcuffed and restrained, he eventually "had the opportunity and ability to attempt to bite Officer Dupree on the left arm." *Id.* at 5–6. Defendant used pepper spray on T.S.'s face, *id.* at 6, which the Government claims was done without justification, Indictment ¶ 6. During this entire encounter, Defendant did not activate his body-worn camera. Gov.'s Opp'n at 4.

Defendant then transported T.S. to the FHPD station following his arrest rather than to the county jail. *Id.* There, Defendant wrote and submitted a probable cause statement to a Maryland state commissioner, which the Government contends includes false information. Indictment ¶ 8.

The Indictment charges Defendant Dupree with Count One, Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242, and Count Two, Obstruction of Justice, in violation of 18 U.S.C. § 1512(b)(3). *Id.* ¶¶ 5–8. Defendant has rejected a plea offer tendered by the Government, *see* Minute Order, Jan. 18, 2024, and a trial is set to begin on June 3, 2024. Defendant filed the pending [45] Motion in Limine to Exclude Improper, Irrelevant and Prejudicial Evidence, which is now ripe for the Court's resolution.

## II. DISCUSSION

Defendant seeks to preclude the Government from referencing or introducing various categories of evidence, which the Court will now address in turn.

### A. Defendant's Other Actions Allegedly in Violation of FHPD Policy and Practice

Defendant seeks to preclude the Government from discussing whether Defendant Dupree acted in contravention of certain FHPD policies and practices. Def.'s Mot. 11. More specifically, he seeks to preclude the introduction of evidence regarding whether Defendant had jurisdiction to

arrest T.S. in the District of Columbia, whether Defendant violated FHPD policy by not turning on his body-worn camera, whether Defendant's use of his personal vehicle on August 4, 2019 was proper, and whether Defendant violated FHPD policy by taking T.S. to the Fairmount Heights police station. *Id.* at 11–12.  He argues that this evidence is not relevant to the charged offense of 18 U.S.C. § 242[2] and also presents a danger of unfair prejudice, confusing the issues, and misleading the jury. *Id.* at 12.

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 401.  The Court finds that evidence of whether Defendant was outside his jurisdiction when he arrested T.S. in the District of Columbia, whether Defendant violated FHPD policy by not turning on his body-worn camera, whether Defendant's use of his personal vehicle rather than a FHPD police cruiser was proper, and whether Defendant violated FHPD policy by taking T.S. to the FHPD station is direct evidence that is relevant to whether Defendant possessed the mens rea of willfulness required by Section 242.

In his motion, Defendant relies on misplaced caselaw; the cases he cites do not involve alleged violations of 18 U.S.C. § 242 but instead relate to 42 U.S.C. § 1983, which does not require a plaintiff to prove that a defendant officer acted willfully.  *See* Def.'s Mot. at 12 (citing *Thompson v. City of Chicago*, 472 F.3d 444, 454–55 (7th Cir. 2006); *Tanberg v. Sholtis*, 401 F.3d 1151, 1164

---

[2] Defendant does not mention the other charged offense, 18 U.S.C. § 1512(b)(3), except in his reply, Def.'s Reply at 5–6, after the Government argued that Defendant's policy violations after the incident are evidence of his intent or motive for that charge, Gov.'s Opp'n at 5–7.  Section 1512(b)(3) makes it a crime to "knowingly… engage[] in misleading conduct toward another person, with intent to… hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense."  18 U.S.C. § 1512(b), (b)(3).  The Court finds that Defendant's transportation of T.S. to the Fairmount Heights police station in alleged violation of FHPD policy is not relevant to the § 1512(b)(3) charge.

(10th Cir. 2005); *Greenridge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991); *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001)); *United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019) ("§ 1983, unlike § 242, is a civil statute that lacks a specific-intent requirement"). But as was discussed in the Court's [64] Memorandum Opinion, and as Defendant even recognizes in the instant Motion, *see* Def.'s Mot. at 10, Section 242 does require a mens rea of willfulness. The Supreme Court has interpreted this mens rea to require that the defendant "had the purpose to deprive the [victim] of a constitutional right," *Screws v. United States*, 325 U.S. 91, 107 (1945), and the United States Court of Appeals for the District of Columbia Circuit has explained that "[o]ne who does act with such specific intent is aware that what he does is precisely that which the statute forbids," *United States v. Ehrlichman*, 546 F.2d 910, 920 (D.C. Cir. 1976).

The Government contends that Defendant Dupree's actions listed above are in contravention of FHPD policies and practices and therefore are evidence of his willfulness. *See* Gov.'s Opp'n at 2.[3] "Willfulness may be shown by circumstantial evidence, provided that the defendant's purpose reasonably may be inferred from all the connected circumstances." *United States v. Cowden*, 882 F.3d 464, 474 (4th Cir. 2018) (citing *Screws*, 325 U.S. at 106); *see also United States v. Williams*, 341 U.S. 70, 94 (1951) (Douglas, J., dissenting) (providing an example of "typical" jury instructions: "In considering whether the defendants had such specific intent, you may take into consideration all the circumstances of the case in the light of the evidence as it has been developed."). Here, the "connected circumstances" before and after Defendant's use of

---

[3] The Court notes that the Government relies on misplaced case law—those holding that evidence of policies on use of force and an officer's non-conformity with those policies can show the specific intent necessary for the charge predicated on use of force. *See* Gov.'s Opp'n at 2. Here the evidence at issue is regarding policies on conduct *other than* use of force and an officer's non-conformity with those policies, but would still be offered to show the specific intent necessary for the charge predicated on use of force.

pepper spray are direct evidence of and relevant to his state of mind and alleged purpose to deprive T.S. of a constitutional right.  For example, evidence of Defendant's failure to turn on his body-worn camera during his encounter with T.S. in violation of FHPD policy makes it more probable that he had the purpose to deprive T.S. of a constitutional right, and that he was aware his behavior was constitutionally forbidden—i.e., that he possessed the requisite specific intent.  So too does evidence regarding Defendant's use of his personal vehicle during patrol rather than an official FHPD police cruiser and evidence that he was outside of his jurisdiction when he made the arrest.  And, as the Government explains, "what Dupree did after his unjustified use of force, including any… policy and practice violations that Dupree committed following the use of force [i.e., taking T.S. to the Fairmount Heights police station], is evidence that Dupree knew what he did was wrong."  Gov.'s Opp'n at 5.

Next, the Court finds that Defendant has failed to sufficiently show that this evidence "present[s] a substantial danger of unfair prejudice, confusion of the issues, and misleading of the jury," Def.'s Mot. at 12, as, notably, he fails to argue any specifics, *see, e.g.*, Def.'s Reply at 5 ("Presenting the jury with expert testimony regarding other purported policy violations… would only serve to unfairly prejudice Officer Dupree and mislead the jury as to the very limited issue it is being asked to consider.").  If Defendant so requests during trial, the Court can issue a limiting instruction to ensure that the jury does not consider such evidence for other purposes.  *See* Fed. R. Evid. 105.

Accordingly, as pertaining to the Section 242 charge, the Court holds that, at this time and based on the arguments presented in the pleadings, the Government is not precluded from introducing evidence of whether Defendant was outside his jurisdiction when he arrested T.S. in the District of Columbia, whether Defendant violated FHPD policy by not turning on his body-

worn camera, whether Defendant's use of his personal vehicle rather than a FHPD police cruiser was proper, and whether Defendant violated FHPD policy by taking T.S. to the Fairmount Heights police station. The Court therefore **DENIES** Defendant's motion to preclude the Government from raising such evidence.

### B. Events After T.S.'s Arrest

Defendant next argues that the Government should be precluded from introducing evidence or argument regarding two events that occurred after the alleged use of excessive force and subsequent arrest. First, he seeks preclusion of evidence that Defendant allegedly brought T.S. to the FHPD station, where they remained for approximately six hours, before transporting him to the Prince George's County Department of Corrections ("DOC"), Def.'s Mot. at 13, which was contrary to FHPD practice requiring direct transportation to DOC, Gov.'s Opp'n at 8. Second, he seeks preclusion of Defendant's statements allegedly made to T.S. during the period between when they left the scene of arrest and arrived at the DOC. Def.'s Mot. at 13. Defendant argues that this evidence is not relevant to the charged offense of 18 U.S.C. § 242[4] and also presents a danger of unfair prejudice. *Id.* at 13–14.

As for the fact that Defendant allegedly brought T.S. to the FHPD station instead of directly to DOC, the Court finds that this evidence is relevant to the Section 242 charge. Similar to the Court's analysis above, the Court finds that the fact that Defendant acted in contravention of FHPD practice is relevant to his state of mind of willfulness.

Additionally, the Court finds that this evidence is relevant to the other charged offense, 18 U.S.C. § 1512(b)(3). Section 1512(b)(3) makes it a crime to "knowingly… engage[] in misleading

---

[4] Defendant does not mention the other charged offense, 18 U.S.C. § 1512(b)(3), except in his reply, Def.'s Reply at 7, after the Government argued that this evidence is relevant to that charge as well, Gov.'s Opp'n at 7–9. The Court will address both charges.

conduct toward another person, with intent to… hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(b), (b)(3). To make out a Section 1512(b)(3) violation, the government must prove that a defendant: (1) engaged or attempted to engage in misleading conduct toward another person; (2) did so knowingly; (3) with the specific intent to hinder, delay or prevent the communication of information; and (4) that it was reasonably likely that the information would have been communicated to a federal law enforcement officer; and (5) that the information related to the commission or the possible commission of a federal offense). *United States v. Sutton & Zabavsky*, Case No. 21-cr-598 (PLF), -- F. Supp. 3d --, 2023 WL 8472628, at *20 (D.D.C. Dec. 6, 2023); *see also United States v. Hawkins*, 185 F. Supp. 3d 114, 124 (D.D.C. 2016) (CKK).

While at the FHPD station, Defendant wrote the allegedly falsified probable cause statement, which stated that following the arrest, "Dupree transported [T.S.] to DOC Upper Marlboro jail without incident." *Id.*; *id.* Ex. No. 1 at 8. Evidence that Defendant did *not* in fact transport T.S. to DOC directly is relevant to some of the elements of the Section 1512(b)(3) offense, i.e., that he knowingly engaged in misleading conduct when writing the probable cause statement.

Next, as for the statements that Defendant allegedly made to T.S., the Court finds that they, too, are relevant to the Section 1512(b)(3) charge. The Government contends that upon arriving at the FHPD station, Defendant pushed T.S. into a chair and told him that he "fucked up his night" because Defendant was "going to get some [expletive,]" and that T.S. was now "going to jail for that." Gov.'s Opp'n at 9. As the Government explains, "[t]his statement shows that Dupree acted intentionally, both to punish T.S. for ruining his night and by engaging in misleading conduct to

8

cover-up Dupree's use of excessive force by lodging false charges against T.S." *Id.* Accordingly, the Court finds that these statements are relevant to the mens rea required by Section 1512(b)(3). *See Zabavsky*, 2023 WL 8472628, at *20 ("knowingly… with the specific intent…"). And, as the Government indicates, such statements would be admissible as non-hearsay as statements against interest. *See* Gov.'s Opp'n at 9; Fed. R. Evid. 801(d)(2)(A) (a statement that "is offered against an opposing party and [] was made by the party in an individual or representative capacity" is not hearsay).

Defendant argues that this evidence is also unfairly prejudicial, as it "impermissibly casts unnecessary and unsubstantiated suspicion on Officer Dupree's motives and emotions." Def.'s Mot. at 14. He does not present any further support for this claim. The Court finds that Defendant has failed to sufficiently show that this evidence presents a danger of unfair prejudice to lead to its exclusion. If Defendant so requests during trial, the Court can issue a limiting instruction to ensure that the jury does not consider such evidence for other purposes. *See* Fed. R. Evid. 105.

Accordingly, the Court holds that, at this time and based on the arguments presented in the pleadings, the Government is not precluded from introducing evidence that Defendant allegedly brought T.S. to the FHPD station instead of directly to DOC and evidence of the statements allegedly made by Defendant to T.S. during that intervening period. The Court therefore **DENIES** Defendant's motion to preclude the Government from raising such evidence.

### C. Defendant's Past Employment

Defendant states that "[f]or the reasons set forth in Officer Dupree's motion in limine to preclude the Government's purported Rule 404(b) evidence and his opposition to the Government's motion to admit certain evidence of prior acts, any evidence regarding Officer Dupree's employment history and prior complaints should be excluded as irrelevant, improper,

9

and unfairly prejudicial." Def.'s Mot. at 15.  In their response, the Government references their arguments made in support of their [32] Motion in Limine and in response to Defendant's [33] Motion in Limine, both of which involved Rule 404(b) Evidence.  Gov.'s Opp'n at 1.

The Court previously issued an order deferring ruling on those Rule 404(b) Motions, finding that the prior employment evidence offered by the Government is relevant to material issues other than character under Rule 404(b), with the exception of evidence regarding Defendant's allegedly excessive force incident involving the previous arrestee for the purpose of showing motive, but holding that the Court reserves its analysis and decision regarding whether the probative value of this evidence is substantially outweighed by the prejudice under Federal Rule of Evidence 403 until trial.  *See* Order, ECF No. 63; Mem. Op., ECF No. 64.  The Court **DENIES AS MOOT** Defendant's Motion here insofar as he seeks a ruling on whether such prior employment evidence will be admitted under Rule 403, as it is addressed by the Court's ruling in its [63] Order.

### D. Testimony from Law Enforcement Officers Not Employed by FHPD

Finally, Defendant asks that the Government be precluded from introducing certain evidence from officers who were not employed by FHPD but who responded to the scene of T.S.'s arrest.

Before the grand jury, the Government asked two such law enforcement officers—Metropolitan Police Department Officer Lancelot Francioni and Prince George's County Police Department Officer Jason Buie—to testify regarding their training and the policies governing their respective departments.  Def.'s Mot. at 13.  They were also asked whether Defendant's pepper spray deployment was a permissible use of force and whether he should have reported his use of pepper spray.  *Id.*  The Court notes that the rules of evidence do not apply to grand jury

proceedings.  Fed. R. Evid. 1101(d)(2).

All parties now agree that officers employed by departments other than the FHPD cannot testify about their own police department policies, as FHPD policy was the only department policy applicable to Defendant Dupree at the time of the incident.  *See* Gov.'s Suppl. Opp'n at 1;[5] Def.'s Mot. at 13.  However, the Government argues that these officers should be able to testify about their training related to federally applicable or constitutional law, their experience as police officers generally, and use of force.  Gov.'s Suppl. Opp'n at 1–2.  They also argue that these officers should be able to testify as to "what they would have done in response to [] T.S.'s unruly behavior," *id.* at 3, and also "their lay opinion as to whether T.S. presented any kind of a threat to the defendant," *id.* at 4, for example.

The Court begins by affirming that these officers may provide eyewitness testimony regarding the events that unfolded on August 4, 2019.  *See* Def.'s Reply to Suppl. Opp'n at 1 ("… Officer Dupree has no objection to fellow law enforcement officers testifying about what they saw, heard, and did in responding to a [] traffic stop that took place on August 4, 2019"). The Government indicates, for example, that the officers "did not see T.S. attempt to bite the defendant or engage in any assaultive or otherwise threatening conduct toward the defendant before the defendant deployed pepper spray against T.S."  Gov.'s Suppl. Opp'n at 3.  This type of eyewitness testimony can be presented to the jury at trial.

The officers cannot provide expert testimony of any kind, whether about use of force, police training, acceptable police behavior or otherwise.  "[Federal Rule of Evidence] 702 governs testimony from expert witnesses—those who testify based on scientific, technical, or

---

[5] In their opposition brief, the Government did not respond to this issue raised in Defendant's motion but, after the Court's prompting, submitted a supplemental response, *see* Gov.'s Suppl. Opp'n, to which Defendant then replied, *see* Def.'s Reply to Suppl. Opp'n.

11

specialized knowledge in a field of expertise." *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011). These officers were not offered as experts, *see* Government's Expert Notice, ECF No. 31, and therefore cannot provide expert testimony pursuant to Rule 702.

The officers can, however, provide lay opinion testimony in accordance with Federal Rule of Evidence 701. Rule 701 permits lay testimony in the form of an opinion when it is "rationally based on the witness's perception; [] helpful to clearly understanding the witness's testimony or to determining a fact in issue; and [] not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

As is the case here, "[j]udicial scrutiny of a law-enforcement witness's purported basis for lay opinion is especially important because of the risk that the jury will defer to the officer's superior knowledge of the case and past experiences with similar crimes." *United States v. Hampton*, 718 F.3d 978, 981–82 (D.C. Cir. 2011). Crucially, "[l]ay opinion is proper when it is based upon personal knowledge of events that occurred in the case being tried," but not when it is based on knowledge from other law enforcement experience generally. *United States v. Williams*, 827 F.3d 1134, 1156 (D.C. Cir. 2016), *cert. denied sub nom. Edwards v. United States*, 137 S. Ct. 706 (2017); *see also United States v. Miller*, 738 F.3d 361, 372 (D.C. Cir. 2013) ("FBI Agent Sparks' testimony about criminal enterprises and investigative techniques appeared to be premised on his specialized knowledge as a criminal investigator, rather than his particularized knowledge of how the Miller/Eiland drug operation was investigated. As such, its admission was plainly erroneous."); *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011) (quoting *United States v. Wilson*, 605 F.3d 985, 1026 (D.C. Cir. 2010)) ("An individual testifying about the operations of a drug conspiracy because of knowledge of that drug conspiracy… should be admitted as a lay witness; an individual testifying about the operations of a drug conspiracy

12

based on previous experiences with other drug conspiracies… should be admitted as an expert."); *United States v. Guerrero*, 665 F.3d 1305, 1309-10 (D.C. Cir. 2011) ("a witness may testify as to the typical characteristics of drug trafficking operations only if first qualified as an expert pursuant to Fed. R. Evid. 702."). The D.C. Circuit has "drawn [this] line because knowledge derived from previous professional experience falls squarely 'within the scope of Rule 702' and thus by definition outside of Rule 701." *Smith*, 640 F.3d at 365.

    The Court holds that the officers may present lay opinion testimony only to the extent that it is based on their personal knowledge, observations, or experiences relating to the specific events on August 4, 2019. Federal Rule of Evidence 701 was designed to ensure that any opinions offered by a lay witness are based on personal, "first-hand knowledge or observation," Fed. R. Evid. 701 adv. comm. note (1972 proposed rule), and "a process of reasoning familiar in everyday life," Fed. R. Evid. 701 adv. comm. note (2000 amend.); *see also Wilson*, 605 F.3d at 408 (explaining that Rule 701's "requirement ensures that lay testimony is the product of reasoning processes familiar to the average person in everyday life") (citation omitted). Accordingly, permissible lay opinion testimony would include, for example, that they did not believe T.S. engaged in any threatening conduct toward Defendant, or that they did not observe any conduct that they think should warrant the use of force, *see* Gov.'s Suppl. Opp'n at 3, so long as this opinion is based on their personal knowledge and observation of the incident.

    The Court holds that the officers may not present opinion testimony based on their previous law enforcement experiences with other traffic stops, their general knowledge or experience as law enforcement officers regarding use of force, or the like. For example, testimony on what they would have done as officers in Defendant Dupree's position based on their experience, Gov.'s Suppl. Opp'n at 3, whether Defendant should have reported his use of

pepper spray, *see* Def.'s Mot. at 13, that an officer is not allowed to use force if an arrestee is "mouthing off," Gov.'s Suppl. Opp'n at 3, what techniques should be used during traffic stops, what Defendant should have done if T.S. was being combative, Def.'s Reply to Suppl. Opp'n at 2, what could warrant the use of pepper spray, *id.*, or other similar testimony is not allowed. Such testimony is not based on anything "familiar in everyday life." Fed. R. Evid. 701 adv. comm. note (2000 amend.). The officers also cannot testify as to training received, particularly that which would not have been applicable to Defendant at the time of his encounter with T.S. This would include, for example, the training offered by the Metropolitan Police Department regarding use of force. *See* Def.'s Reply to Suppl. Opp'n at 2 (citing Officer Francioni's grand jury testimony).

       Moreover, the Court holds that the bases of these officers' opinions must be made known to the jury in such a way that the jury can assess the opinion and test the witnesses' reasoning. The D.C. Circuit has made clear that a law enforcement agent testifying as a lay witness must "identify for the jury the specific observations and inferences on which he grounds each lay opinion." *Williams*, 827 F.3d at 1160. Additionally, the witnesses may not simply state that their opinions are based generally on their overall knowledge of Defendant's encounter with T.S., or on aspects of that encounter not made known to the jury. *Id.* at 1158; *Hampton*, 718 F.3d at 983 (holding that law enforcement witness did not provide sufficient basis for lay opinion testimony because he stated it was based on recorded calls not all of which were admitted into evidence); *Miller*, 738 F.3d at 373 (holding that admission of lay opinion from law enforcement agents "was erroneously admitted because they did not set forth the specific bases (events, other calls, seizures of contraband, etc.) upon which their opinions rested—other than broad claims about knowledge they had gained from the investigation."). The jury must be informed of the

precise bases of the officers' opinions and those bases must be available for the jury itself to consider.

Accordingly, the Court **GRANTS** Defendant's motion regarding testimony of officers not employed by FHPD and holds that such eyewitness law enforcement officers can only provide lay opinion testimony.

### III. CONCLUSION

For the reasons set forth above, the Court shall **DENY** Defendant's motion to preclude the Government from introducing evidence of whether Defendant was outside his jurisdiction when he arrested T.S. in the District of Columbia, whether Defendant violated FHPD policy by not turning on his body-worn camera, whether Defendant's use of his personal vehicle rather than a FHPD police cruiser was proper, and whether Defendant violated FHPD policy by taking T.S. to the FHPD station.  The Court shall **DENY** Defendant's motion to preclude the Government from introducing evidence that Defendant allegedly brought T.S. to the FHPD station instead of directly to DOC and evidence of the statements allegedly made by Defendant to T.S. during that intervening period.  The Court shall **DENY AS MOOT** Defendant's motion seeking to exclude evidence of his prior employment under Rule 403, as it is addressed by the Court's ruling in its [63] Order.  And finally, the Court shall **GRANT** Defendant's motion regarding testimony of officers not employed by FHPD and holds that such eyewitness law enforcement officers can only provide lay opinion testimony.

An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
