**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | **CRIMINAL NO. 22-CR-275 (CKK)** |
| | : | |
| PHILIP DUPREE, | : | |
| | : | |
| (aka "PHILLIP DUPREE), | : | |
| Defendant. | : | |

**GOVERNMENT'S SENTENCING MEMORADUM**

    The United States, by its undersigned counsel, submits this memorandum in support of its sentencing recommendation for Defendant Philip Dupree ("Dupree").

**I.      Introduction**

    Dupree, a former Maryland police officer from the Fairmount Heights Police Department ("FHPD"), while cloaked in his authority as such, violated the civil rights of Torrence Sinclair by pepper-spraying him in the face for mouthing off and calling Dupree juvenile insults.    On August 4, 2019, during a traffic stop in which Sinclair was handcuffed, in Dupree's custody and control, and posed no threat, Dupree abused his authority as an officer by willfully assaulting a handcuffed prisoner in his care.  Dupree then tried to cover up his misconduct by submitting falsified affidavits that minimized his own conduct. On June 17, 2024, following trial, a jury found Dupree guilty beyond a reasonable doubt and convicted him of deprivation of rights under color of law for using excessive force against Sinclair.

    To address the gravity of his federal offense and further the goals of the criminal justice system, the government recommends that the Court sentence Dupree to a statutory maximum term of incarceration that is within his recommended Sentencing Guidelines, of offense level 31,

criminal history category I.[1]  This equates to a 120-month sentence, which falls in the middle of the Guidelines range.

## II.    Procedural Posture

On August 16, 2022, the grand jury returned a two-count indictment charging Dupree with violating 18 U.S.C. § 242 (deprivation of rights under color of law) and 18 U.S.C. § 1512(b)(3) (obstruction of justice).  ECF 1.  The charges stemmed from Dupree's use of excessive force involving a dangerous weapon (pepper spray) against Sinclair during a traffic stop on August 4, 2019, and Dupree's cover-up of that offense.  *Id.*  After a jury trial, on June 17, 2024, Dupree was found guilty of the Section 242 charge.  *See* Minute Entry, Jun. 17, 2024.  Specifically, the jury determined that Dupree's use of excessive force resulted in bodily injury to Sinclair.  ECF No. 116.  Dupree was acquitted by the jury of the obstruction of justice violation.  *Id.*

## III.    Overview of the Crimes

The government relies on this Court's factual findings set forth in its detailed opinion denying Dupree's post-trial motion for judgement of acquittal and incorporates them here by reference.  *See* ECF 107, Mem. Op. Mar. 13, 2025, at pp. 1-4.  This Court found that "[t]he Government adduced sufficient evidence for a reasonable jury to conclude that Officer Dupree deprived Mr. Sinclair of his Fourth Amendment right to be free from unreasonable searches and seizures by using unreasonable force against him."  *Id.*, at p. 6.  During trial, the government presented the testimony of several witnesses and admitted approximately 68 exhibits into evidence.  *See* ECF No. 111.  The Court found that "Dupree deployed his [pepper-spray while] Mr. Sinclair

---

[1] The government submitted objections to the Sentencing Guidelines calculation determined by Presentence Investigation Report (PSR), which failed to apply two victim-related adjustments.  As discussed below in Section V, the government's calculation accounts for these upward adjustments.

was handcuffed with his hands behind his back in [] Dupree's car." *Id*., at 7. The Court further found that evidence of Dupree's obstructive conduct, for which he was acquitted by the jury in Count 2 of the indictment, was part of the evidence that proved beyond a reasonable doubt that Dupree willfully committed the offense of conviction. *Id*., at p. 13.

The evidence presented at trial established the facts underlying Dupree's conviction for excessive force beyond a reasonable doubt, which also included the conduct underlying the obstruction offense for which Dupree was acquitted. *See* ECF 107, at pp. 6-15.

Following Dupree's use of excessive force, he transported Sinclair to the FHPD station instead of the county lock-up as required by FHPD policy. *See, e.g.*, GX 305 (photo of Sinclair at the FHPD station). Dupree detained Sinclair at the FHPD station for several hours before handing him over to the county jail. *See, e.g.*, GX 300 (Upper Marlboro intake report at p. 2).

While at the FHPD station, and before turning Sinclair over to the county jail, Dupree engaged in obstructive conduct, which included falsifying a "Statement of Probable Cause" ("PC statement"). *See, e.g.*, GX 301 (PC statement). He used that false PC statement to mislead a Maryland judicial officer into approving false charges against Sinclair to justify Dupree's excessive force. *See* ECF 107, at p. 13 ("Specifically, the evidence showed that Officer Dupree misrepresented key facts about the events of August 4 [in the PC statement] in a way that tended to minimize his culpability and *head-off further investigation*.") (emphasis added).

In the falsified PC statement that secured the bogus charges lodged by Dupree against Sinclair to justify Dupree's misconduct, Dupree "misrepresented" several key facts. *Id*. First, he falsely claimed that while Sinclair was seated in Dupree's unmarked police cruiser, Sinclair "reached around and unlocked the police door and tried to jump out of the car several times." *See, e.g.*, GX 301; Trial tr. June 7, 2024, (PO Francioni) at 192:22-24, 252:4-14; Trial Tr. June 6, 2024,

(Cpl. Buie at 180:14-23; Trial tr. June 10, 2024, PM, (Sgt. Gleason) at 70:25, 71:1-5).  Next, Dupree claimed that Sinclair "started to kick and damage things inside" the vehicle.  *See, e.g.*, GX 301 at p. 6.  Dupree further wrote that he "tried to work with [Sinclair] but he kept on trying to fight and bite me[.]," which was another false statement.  *Id.*, at p. 7.  With respect to Dupree's use of pepper spray, he wrote that he had "deployed [his] Department issued (Pepper Spray) which did get [Sinclair] to comply for a short time." *Id.*  Dupree also claimed that the traffic stop occurred on the Maryland side of the border, and that Emergency Medical Services ("EMS") decontaminated Sinclair following the pepper spray deployment.  *Id.*  According to three government witnesses – Prince Georges County Police Department ("PGPD") Corporal Jason Buie, Metropolitan Police Department ("MPD") Officer Lancelot Francioni, and Prince Georges Fire Department ("PGFD") Medic James Kittrell – Dupree's statements were false.  *See*, *e.g.*, Trial Tr. June 6, 2024, (Cpl. Buie) at 179:2-13, 180:14-23, 180:25-181:3, 181:14-18, 184:14-17; Trial Tr. Friday June 7, 2024, (PO Francioni) at 192:6-11, 192:22-193:14, 193:23-194:2, 250:22-251:8, 252:4-14, 253; Trial Tr. Friday, June 7, 2024, (EMS Kittrell) at 126:8-15.  Finally, Dupree claimed that he transported Sinclair "without incident" from the traffic stop to the county jail in Upper Marlboro.  *See* GX 301 at p. 7; Trial Tr. June 10, 2024, PM (Sgt. Gleason) at 75:8-15.  This was also false.  *See* GX 305, GX 300.

Dupree's narrative concerning Sinclair's conduct, and Dupree's justification for the use of pepper spray, was inconsistent with the evidence presented at trial.  Both video footage and eyewitness accounts contradicted the false and misleading PC statement.  The evidence demonstrated that Dupree used excessive force and that he fabricated a narrative to justify his misconduct, which proved Dupree acted willfully.  Based upon the falsified PC statement, the judicial officer approved the following charges: disorderly conduct, resisting arrest, and attempted

escape from police custody. *See* GX 301.

In short, the evidence presented at trial proved beyond a reasonable doubt that Dupree used excessive force against a handcuffed and defenseless victim, Sinclair. Dupree's obstructive conduct was part of the evidence that proved he acted willfully when he committed the offense of conviction. *See* ECF 107, at pp. 13.

## IV.    Statutory Penalties

Dupree's count of conviction, 18 U.S.C. § 242, Deprivation of Rights Under Color of Law, carries a maximum sentence of 10 years' incarceration (or 120 months).

## V.    Sentencing Guidelines Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 45 (2007); *Rosales-Mireles v. United States*, 585 U.S. 129, 133 (2018) ("[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.") (internal quotations and citations omitted). "[T]he Guidelines remain the foundation of federal sentencing decisions. *Hughes v. United States*, 584 U.S. 675, 685 (2018). "As a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id.* at 46.

"It is the Government's burden to demonstrate by a fair preponderance of the evidence that an enhancement is warranted." *United States v. Bapack*, 129 F.3d 1320, 1324 (D.C. Cir. 1997) (cleaned up). In resolving a factual dispute related to sentencing, the Guidelines permit a district court to "consider relevant information without regard to its admissibility under the rules of

evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." *United States v. Leyva*, 916 F.3d 14, 24-25 (D.C. Cir. 2019).

The government objects to the Sentencing Guidelines calculation set forth in the Presentence Investigation Report ("PSR"). ECF 120, PSR at p.7, ¶¶ 30, 32. Specifically, government has proven by a preponderance of the evidence that the victim, Sinclair, was restrained during the offense of conviction, pursuant to U.S.S.G. § 3A1.3, and that obstructing justice was part of Dupree's conduct, that established in part, the instant offense of conviction, pursuant to U.S.S.G. § 3C1.1 and § 1B1.3 application note 10.

Dupree's Base Offense Level for the count of conviction was correctly calculated by the PSR as 14. PSR at p. 6, ¶ 26. His Base Offense Level is adjusted as follows:

| Guideline | Description | Adjustments |
|---|---|---|
| § 2H1.1(a)(1) | The guideline applicable to any underlying offense | |
| § 2A2.2(a) | Aggravated Assault base offense level[2] | 14 |
| § 2A2.2(b)(2)(b) | Specific offense characteristic – dangerous weapon (pepper spray)[3] | 4 |
| § 2A2.2(b)(3)(B) | Specific offense characteristic – bodily injury | 3 |
| § 2H1.1(b) | Specific offense characteristic – color of law | 6 |
| § 3A1.3 | Restraint of victim[4] | 2 |

---

[2] U.S.S.G § 2A2.2(a) (Aggravated Assault) is the applicable cross-reference because Dupree used a dangerous weapon to commit the assault and caused Sinclair to suffocate. *See* U.S.S.G. § 2A2.2 Application note 1; GX 101 at 25:13 (Sinclair repeatedly exclaiming "I cannot breathe."); *see also* Fn. 3 (below).

[3] *See, e.g., United States v. Worrell*, 848 F.App'x 5 (D.C. Cir. 2021) (holding that the district court did not plainly err in finding that pepper spray was a dangerous weapon); *United States v. Melton*, 233 F.App'x 545, 547 (6th Cir. 2007) (holding that pepper spray constitutes a dangerous weapon for sentencing purposes); *United States v. Neill*, 166 F.3d 943, 950 (9th Cir. 1999) (rejecting the claim that pepper spray cannot be a dangerous weapon); *United States v. Bartolotta*, 153 F.3d 875, 879 (8th Cir. 1998) (holding that where mace did in fact cause serious injury it constituted a dangerous weapon).

[4] "Physically restrained" means the forcible restraint of the victim *such as* being tied, bound, or locked up. U.S.S.G. §1B1.1 (Application note 1(K)) (emphasis added). This adjustment is applicable where the victim was handcuffed during the commission of the offense of conviction. *See, e.g., United States v. Clayton*, 172 F.3d 347, 353 (5th Cir. 1999); *United States v. Evans*, 85

| § 3C1.1 | Obstructing or impeding the administration of justice[5] | 2 |
|---|---|---|
| **Combined Adjusted Offense Level** | | **31** |

Based upon Dupree's criminal history as reflected in the PSR, he should be sentenced under Criminal History Category I. *See* PSR, at pp. 7-9, ¶¶ 38-44. Accordingly, Dupree's combined adjusted offense level is 31, which corresponds to a Guidelines sentencing range of 108-135 months. The Section 242 conviction has a statutory cap of 120 months as discussed in Section IV, above. For the reasons explained below, the government is requesting a 120-month sentence.

## VI. Section 3553(a) Sentencing Factors

After calculating the Guidelines, the Court should next consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50. Section 3553(a) provides that the Court consider the following: (A) "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1); (B) "the history and characteristics of the defendant," *id.*; (C) promotion of "respect for the law," 18 U.S.C. § 3553(a)(2)(A); (D) general and specific "deterrence," 18 U.S.C. § 3553(a)(2)(B)(C); (E) the Guidelines and Guideline range, § 3553(a)(4); and (F) "the need to avoid unwarranted

---

F.3d 617 (4th Cir. 1996); *United States v. Salim*, 549 F.3d 67, 76 (2d Cir. 2008).

[5] This upward adjustment is appropriate notwithstanding Dupree's acquittal of Count 2 because his obstructive conduct overlapped with evidence that proved the count of conviction. U.S.S.G. §1B1.3(c) allows for acquitted conduct to be considered as relevant when "such conduct also establishes, in whole or in part, the instant offense of conviction." Application note 10 states "[t]here may be cases in which certain conduct underlies both an acquitted charge and the instant offense of conviction. In those cases, the court is in the best position to determine whether such overlapping conduct establishes, in whole or in part, the instant offense of conviction and therefore qualifies as relevant conduct." Specifically, this Court, having been in the best position to determine whether such overlapping conduct established the offense of conviction, found that "evidence of Officer Dupree's conduct *after* pepper-spraying Mr. Sinclair supported an inference that he knew his conduct was unlawful." *See* ECF 107, Mem. Op. Mar. 13, 2025, at p. 13 (emphasis added).

sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6).

A.     *Nature and Circumstances of the Offenses*

The nature and circumstances of the offense support a significant sentence for Dupree. Dupree abused his authority as a sworn police officer and assaulted a restrained prisoner, both of which erode the trust between law enforcement and the community they are called upon to serve and protect. Worse, Dupree then lied about his conduct to try and cover it up.

From the beginning of the traffic stop, Dupree failed to follow proper police procedure. He conducted a traffic stop in the District of Columbia, which is beyond his jurisdiction in Maryland. *See* ECF 107 at 3. He failed to activate his body-worn camera ("BWC"). *Id*., at 2. From the beginning of the stop, Dupree threatened to pepper spray Sinclair and Sinclair's sister, a passenger in the vehicle. He arrested Sinclair after threatening to pepper-spray him, and warned Sinclair that he would activate his BWC "and make it a legitimate arrest." *Id*. He again threatened to pepper spray Sinclair's sister, Taylor Sinclair ("Taylor"), when she refused to exit Sinclair's vehicle. This statement was recorded by PO Francioni's BWC upon his arrival at the scene. *Id*., at 2-3. Throughout the stop, Sinclair screamed, danced, sang, cracked wise, and generally behaved in a disruptive manner. *Id*., at 3. As Cpl. Buie testified, Sinclair no-doubt "acted a fool." Eventually, Dupree became frustrated and punished Sinclair by pepper-spraying him on his face while Sinclair was handcuffed and seated in Dupree's car. *Id*., at 12. But as the evidence powerfully demonstrated, simply acting a fool is not a justification for an officer to willfully assault a prisoner in law enforcement custody and care. As PO Francioni told the jury, "You just don't do that." *Id*., at 7.

Following the assault, and as evidence of his willful conduct, Dupree transported Sinclair

to the FHPD station to begin his cover-up instead of transporting Sinclair to the hospital for treatment or to the county jail, which he was required to do under FHPD policy. *See, e.g.*, Trial Tr. June 10, 2024 (SA Frye) at 77:1-14; *see also* GX 507 (FHPD Policy on warrantless arrests) at p. 5. While at the FHPD station, Dupree concocted his false narrative to conceal his misconduct. Specifically, he drafted and submitted a falsified PC statement to a Maryland state commissioner "that tended to minimize his culpability and head-off further investigation." *See* ECF 107 at 13.

A Guidelines sentence would account for the seriousness of Dupree's offenses. Dupree abused his position of trust and authority when he assaulted the victim and covered up his misconduct. He used a dangerous weapon against a defenseless handcuffed man. Dupree assaulted Sinclair in front of his sister, mother, and other police officers. His assault caused Sinclair to needlessly suffer pain that law enforcement witnesses at trial described as excruciating. *See* Trial Tr. June 6, 2024, (Cpl. Buie) at 61:23-62:9; Trial Tr. June 7, 2024, (PO Francioni) at 156:4-17; Trial Tr. June 10, 2024, AM, (Sgt. Gleason) at 142:12-24; Trial Tr. June 10, 2024 PM, (Sgt. Gleason) at 40:9-21, 46:3-19). Dupree's conduct constituted a colossal breach not only of his professional duty but also Sinclair's Constitutional rights, resulting in a significant erosion of public trust and sense of safety within the community he served. For this reason, the nature and circumstances of the offense supports a Guidelines sentence.

B.     *The History and Characteristics of the Defendant*

Dupree's history and characteristics, including his personal history of misconduct as a police officer for the FHPD and other Maryland police departments, support imposition of a Guidelines sentence. As demonstrated through the government's Rule 404(b) evidence, the PSR's Criminal History section, and Dupree's involvement in another criminal prosecution, Dupree's lengthy pattern of misconduct while employed as a law enforcement officer underscored his

willful, assaultive conduct against Sinclair. *See, e.g.*, ECF 64, Mem. Op. May 10, 2024; PSR at p. 8, ⁋ 43; USA Sentencing Exhibit A (*United States v. Vanderpool*, 23-cr-234 (D.Md), Oct. 30, 2024 (Trial Tr. of the court's findings)).

At trial, the jury was presented with evidence of Dupree's prior termination from the District Heights, Maryland, Police Department for his inability to remediate citizen "use of force" complaints against him. See ECF 107, at p. 12. Additionally, during pre-trial litigation, this Court considered the government's Rule 404(b) motion to admit evidence of an earlier pepper-spray assault from September 2018 while Dupree was employed by the FHPD. *See* ECF 64, at p. 14. This Court was also apprised of Dupree's termination from yet another Maryland law enforcement agency – the Prince George's Community College Police Department – for using excessive force. *See* ECF 40, fn. 2; *see also* USA Sentencing Exhibit B (Prince Georges Community College disciplinary recommendation report). Although this Court ultimately precluded the government from admitting at trial evidence of any prior excessive force incidents, this evidence is relevant to the Court's consideration of this sentencing factor.

Moreover, Dupree's negative law enforcement history is well documented beyond the record in this case. First, as mentioned in the PSR, Dupree is a co-defendant in a pending federal white-collar prosecution in the District of Maryland. PSR at p. 8, ⁋ 43. According to the indictment in that case, Dupree and several other Maryland police officers conspired to and committed fraud that involved filing falsified police reports and claims to fraudulently obtain money from financial institutions and insurance companies. *See United States v. Dupree*, et al., 21-cr-284 (D.Md), at ECF 151 (third superseding indictment, attached as USA Sentencing Exhibit C). Dupree was also charged with an arson offense that was part of the fraud scheme. *Id*.

Dupree was also involved, though not charged, in an incident with another FHPD officer

that led to the officer being indicted with a federal obstruction offense for falsifying a police report. *See United States v. Vanderpool*, 21-cr-354 (D.MD), at ECF 1. Specifically, that prosecution, in which the defendant FHPD officer – Martique Vanderpool – was convicted, was about a cover-up of a sex assault committed by Vanderpool following the victim's arrest. *Id*. Evidence in that case proved that the victim – a teenager – was arrested for speeding by Vanderpool and Dupree on September 6, 2019, about a month after Dupree had assaulted Sinclair. *United States v. Vanderpool*, 2025 WL 403806 at *8 (D.Md Feb. 5, 2025). At the time of the stop, the victim was in a state of panic and distress because she was rushing to get to her injured child. *Id*. Dupree forced the victim to the ground and handcuffed her, "slamming her and scraping her knee in the process." USA Sentencing Exhibit A at p. 6. Vanderpool searched her car and had it towed. *Id*. During the search, "Vanderpool saw condoms in the center console area of the car." *Id*. The officers then drove the restrained victim to the FHPD station late at night, when no one was there, and against policy. *Id*.; *Vanderpool*, 2025 WL 403806 at *8. Dupree and Vanderpool should have taken the victim to Upper Marlboro for processing. USA Sentencing Exhibit A at p. 7. When they arrived, Vanderpool gave Dupree a condom and kept one for himself. *Id*., at 8. USA Sentencing Exhibit A at p. 8. Dupree dimmed the lights and left the room. *Id*. Vanderpool then sexually assaulted the victim. *Id*., *Vanderpool*, 2025 WL 403806 at *8. Although Dupree was not charged with any participation in this crime, this history shows that his misconduct in the case before this Court was not aberrant behavior.

Dupree's offense of conviction was not an isolated incident of assaultive conduct committed under color of law. Rather, his assault of Sinclair is indicative and reflective of a pattern of escalating criminal conduct. Simply put, Dupree has a long history of abusing the public's trust and using excessive force. His history and personal characteristics warrant a Guidelines sentence.

*C.    Promotion and Respect for the Law*

Considering the gravity of the offenses, a significant sentence in this matter is necessary to reflect the seriousness of the offense and promote respect for the law.  *See Gall*, 552 U.S. at 54 (recognizing that "a lenient sentence for a serious offense threatens to promote disrespect for the law").  A Guidelines sentence is appropriate in this case because Dupree demonstrated a blatant disregard for the law when he assaulted Sinclair.  As established at trial, "evidence of [] Dupree's conduct after [he] pepper-spray[ed] [] Sinclair" proved "that he knew his conduct was unlawful." ECF 107, at p. 13.  Dupree "knew that deploying pepper spray against a handcuffed detainee was unreasonable, knew that unreasonable force was unlawful, and deliberately deployed that force anyway to punish [] Sinclair – with whom he was upset and frustrated."  *Id*.

It did not matter to Dupree that he was committing a crime, because he has never suffered any serious consequences as a result of his misconduct.  All of Dupree's choices – whether in the past, this case, or his pending criminal case in the District of Maryland (*see* USA Sentencing Exhibit C; PSR at p. 8, ¶ 43) – point to the obvious need for a Guidelines sentence that will promote respect for the law that he was sworn to uphold.

*D.    General and Specific Deterrence*

Imposition of a significant sentence is necessary to provide for both general and specific deterrence.  "Under the theory of general deterrence, the government essentially seeks to make an example of an offender through punishing him so that other potential offenders are intimidated into refraining from committing the contemplated crime."  *United States v. Slatten*, 865 F.3d 767, 819 (D.C. Cir. 2017) (noting that "harsh sentences" "generally operate as strong deterrents"); *United States v. Diaz-Navarro*, 567 F. App'x 256, 257 (5th Cir. 2014) (since defendant had

committed offense before and received a light sentence a "'long incarceration period'" was necessary for deterrence); *United States v. Rivera*, 488 F. App'x 225, 227 (9th Cir. 2012) (harsh sentence necessary for deterrence in light of defendant's recidivism).

First, a significant sentence is necessary "to afford adequate deterrence to criminal conduct" by others.  18 U.S.C. 3553(a)(2)(B).  Sentencing Dupree to a period of incarceration would deter other law enforcement officers from committing civil rights violations and other misconduct under color of law.

Second, a significant sentence is also necessary for specific deterrence.  Considering Dupree's assault, and history of abusing his authority – whether through the use of force or other misconduct both before and after the charged offenses in this case, a prison sentence will deter him from engaging in future violations of federal law.

Without imposition of a Guidelines sentence here, Dupree and other would-be violators will not be discouraged from engaging in misconduct and may believe that there are relatively minimal consequences for flagrantly committing crimes that violate civil rights or the public's trust in police officers.

## E.    The Sentencing Guidelines

Examination of the Section 3553(a) factors shows that a Guidelines sentence is appropriate in this case.  While a "sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," *Rita v. United States*, 551 U.S. 338, 351(2007), and it "may not presume that the Guidelines range is reasonable," *Gall*, 552 U.S. at 50; *Nelson v. United States*, 555 U.S. 350, 350 (2009), "even in an advisory capacity the Guidelines serve as 'a meaningful benchmark' in the initial determination of a sentence and 'through the process of appellate review.'"  *Rosales-Mireles*, 585 U.S. at 133.

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita*, 551 U.S. at 349. As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108. As the Third Circuit has stressed:

> The Sentencing Guidelines are based on the United States Sentencing Commission's in-depth research into prior sentences, presentence investigations, probation and parole office statistics, and other data. U.S.S.G. § 1A1.1, intro, comment 3. More importantly, the Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process. *See* 28 U.S.C. § 994(p) (providing for Congressional oversight of amendments to the Guidelines). Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case. Because they have been produced at Congress's direction, they cannot be ignored.

*United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2005).

In light of Dupree's conduct in this case, a Guidelines sentence would be reasonable and appropriate. Such a sentence would be reasonable because it accounts for his conduct in this case, as well as his history of misconduct. And, it would be sufficient, but not greater than necessary, to comply with the basic aims of Section 3553(a). *Rita*, 551 U.S. at 348.

### F.    Unwarranted Sentencing Disparities

This Court should impose a Guidelines sentence to avoid sentencing disparities. 18 U.S.C. § 3553(a)(6); *see, e.g.*, *Molina-Martinez v. United States*, 578 U.S. 189, 193 (2016) ("Uniformity

and proportionality in sentencing are achieved, in part, by the Guidelines' significant role in sentencing"); *United States v. Alford*, 89 F.4th 943, 953 (D.C. Cir. 2024) ("Thus, '[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly.'"); *United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2024) (same).

Dupree is similarly situated to numerous other law enforcement officers nationwide who received Guidelines sentences following a conviction for using excessive force in violation of Section 242.  *See, e.g.*, *United States v. Johnstone*, 107 F.3d 200, 210 (3d Cir. 1997) (87-month Guidelines sentence affirmed in a Section 242 case involving aggravated assault with a flashlight, including a four-level dangerous weapon enhancement); *United States v. Livoti*, 196 F.3d 322 (2d Cir. 1999) (90-month Guidelines sentence affirmed in a Section 242 excessive force case where the district court properly applied an involuntary manslaughter Guidelines cross-reference and departed upward based upon the convicted officer's criminal history); *United States v. Douglas*, 957 F.3d 602 (5th Cir. 2020) (60-month statutory maximum sentence imposed on defendant police officer who pleaded guilty to Section 371 offense as part of a plea agreement for pepper-spraying victim arrestee).

The government also strongly opposes any requested variance from the Sentencing Guidelines.  Dupree's conviction in this case, and his history as a police officer, demonstrates that he has a propensity for criminal conduct that is exacerbated by his abuse of authority entrusted to him as a law enforcement officer, rendering his actions particularly egregious and deserving of a Guidelines sentence.  Combined with the other sentencing factors, a Guidelines sentence would serve the Section 3553(a) factors.

IX.    **Requested Sentence**

The government requests this Court sentence Dupree to a statutory maximum term of 120 months imprisonment, a request the government does not make lightly.  First, the advisory Guidelines Sentencing range of 108 to 135 months should be given considerable weight.  Indeed, the Guidelines range is itself a § 3553(a) factor and the first factor the Supreme Court has instructed lower courts to consider.  "The fact that § 3553(a)[(4)] explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."  *Gall*, 552 U.S. at 50, n.6.  Second, one of the Sentencing Commission's purposes in promulgating the Guidelines was to "assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2)."  28 U.S.C. §§ 991(b)(1)(A), 994(f).  The Commission wrote the Guidelines to "carry out these same § 3553(a) objectives," resulting in "a set of Guidelines that seek to embody the § 3553(a) considerations, both in principle and in practice."  *Rita*, 551 U.S. 338, 350.  "[W]here judge and Commission both determine that the Guidelines sentence is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)," and that "significantly increases the likelihood that the sentence is a reasonable one."  *Rita*, 551 U.S. at 347, 355.  In other words, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 89.

Police officers occupy a unique status in our society.  They automatically command respect by virtue of their position.  And they are endowed with the authority to carry a lethal weapon and deprive private citizens of their constitutionally guaranteed freedom.  Dupree exploited his unique ability and authority to prey on citizens.  As his record as an officer demonstrates, he has done so

again and again and again.   He also abused the authority of his office by trying to cover up his misconduct and cooking up phony charges, which further deprived Sinclair of his liberty and led to Sinclair's involvement in the criminal justice system.   A 120-month prison sentence will appropriately address all the Section 3553(a) factors.

Respectfully submitted,

HARMEET K. DHILLON
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION
*/s/ Sanjay H. Patel*
SANJAY H. PATEL
IL Bar. No. 6272840
Trial Attorney
Criminal Section, Civil Rights Division
4 Constitution Square
150 M St. NE, 7.121
Washington, D.C. 20530
Email: Sanjay.Patel@usdoj.gov

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY
*/s/ Christopher Howland*
CHRISTOPER HOWLAND
D.C. Bar No. 1016866
Assistant United States Attorney
601 D Street, NW
Washington, DC 20001
Email: Christopher.Howland@usdoj.gov

## **CERTIFICATE OF SERVICE**

       SANJAY H. PATEL, attorney for the United States, hereby certifies that a true and correct copy of the motion has been electronically filed and accordingly served upon attorney for the Defendant.

DATED: June 27, 2025                      */s/ Sanjay H. Patel*
                                                Sanjay H. Patel